**UNITED STATES of America**

v.

**Dennis William RATHBURN.**

**Crim. A. No. 6535.**

United States District Court,
D. Vermont.

May 3, 1979.

**18**

David W. Curtis, Corrections Defender, Montpelier, Vt., for petitioner.

Jerome J. Niedermeier, Asst. U. S. Atty., Rutland, Vt., for respondent.

## MEMORANDUM OF DECISION

HOLDEN, Chief Judge.

Petitioner has applied for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2255, claiming that his 1967 conviction in the United States District Court for the District of Vermont was obtained in violation of the constitutional prohibition against double jeopardy.

By interlocutory order the petitioner's request for assignment of counsel under the Criminal Justice Act was granted. The Government responded and tendered the record of the trial. The Vermont Defender General for Corrections was appointed to represent the petitioner. The case was submitted on the record and the petitioner's affidavit. Oral arguments were presented March 9, 1979.

## I. FACTS

On November 7, 1967, Dennis William Rathburn, along with Jack Rex Pigman, Lester Murray VanBlericom, Richard Allen Kloberdance and Mary Butts, was indicted on three counts. The first count charged a violation of 18 U.S.C. § 2314 (interstate transportation of forged security), the second charged a violation of 18 U.S.C. § 371 (conspiracy to transport forged security in interstate commerce), and the third charged a violation of 26 U.S.C. § 5851 (unlawful possession of an unregistered sawed-off shotgun). Trial began on December 4. On December 5, however, defendants VanBlericom and Kloberdance changed their pleas as to counts two and three from "not guilty" to "guilty." After the court accepted the change of pleas, a discussion ensued as to whether the jury could fairly try the remaining co-defendants.[1] With the acquiescence of all parties,

---

1. The Court: Anybody else anything they want to say before I call the Jury in?

Mr. Cain (counsel for Defendant Rathburn): Seems to me, Your Honor, that it should be made very clear to the Jury, that these two respondents have not pleaded "guilty" to Count I.

The Court: Yes, you are quite right. I will tell them that. Anybody else got anything they want to offer before I get the Jury back?

Mr. McNamara (counsel for defendant Butts): If the Court please, this is a little strange; I have never been involved in anything like this before, and . . . . .

The Court: Well, this is the first experience this Court has had with a lot of defendants.

Mr. McNamara: We can't.—I can't possibly see how my client, now, can get a fair trial, no matter how strongly you advise the Jury. They are going to know what the score is and I just can't see that she will get a fair trial. I mean, she is charged with Conspiracy and they have heard the whole indictment. Now, two of them are gone on pleas of "Guilty," but they are supposed to disregard it. They just can't disregard it. I don't think.

The Court: What do you say, Mr. Radigan?

Mr. Radigan (U.S. Attorney): Of course, we can declare a mistrial and draw a new Jury right off and go ahead with these two. But, —well, your Honor, I am—frankly,—I am a little bit worried. The Government wants to be absolutely fair here.

the court declared a mistrial and excused the jury. The next day the court empaneled a new jury and began petitioner's second trial. On December 15, 1967, the jury returned a verdict of guilty against each of the defendants on all three counts. The Court of Appeals for the Second Circuit affirmed petitioner's conviction. *United States v. Rathbun et al.*, 414 F.2d 767 (1969).

Petitioner, now serving consecutive sentences of ten and five years, claims in his petition for a Writ of Habeas Corpus that he was twice tried for the same crime when the second jury was empaneled to hear his case.

## II. LAW

■ The Fifth Amendment requires that once a jury has been impaneled and jeopardy has attached, the defendant has a right to have his trial completed by that particular tribunal. *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949), *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). This furthers the historical purpose of the double jeopardy clause: to prevent the Government from repeatedly attempting to convict a defendant once he has been acquitted. It also protects the accused against "continued exposure to anxiety, embarrassment, expense and restrictions on his liberty that might be caused by aborting one trial to commence another." *Dunkerley v. Hogan*, 579 F.2d 141, 145 (2d Cir. 1978).

■ Countervailing the defendant's right to be tried before a particular tribunal is the public's interest in insuring that the prosecutor has one full and fair opportunity to present his case against the accused. In striking a balance between these two interests, the Supreme Court held in its landmark decision of *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), that double jeopardy considerations will not bar a retrial when "manifest necessity" requires that the first jury be discharged.

■ The "manifest necessity" standard has traditionally been applied in reviewing a trial judge's entry of mistrial over the defendant's opposition. *See, e.g., Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891). Where the mistrial is declared upon defendant's own motion, however, a different analysis is required. Such a defendant is assumed to have waived any double jeopardy claims. *United States v. Scott*, 437 U.S. 82, 93–94, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). *See United States v. Grasso*, 552 F.2d 46, 49 (2d Cir. 1977) (dictum), *vacated and remanded*, 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1144 (1978). To allow a defendant to move for a mistrial only later to object to a retrial on double jeopardy grounds would frustrate the public interest in a full and fair prosecution.

■ There are situations, however, where a defendant who consented to a mistrial may still be entitled to double jeopardy protection. Retrial is precluded where "bad faith conduct by judge or prosecutor," *United States v. Jorn*, 400 U.S. at 485, 91 S.Ct. at 557, threatens the "[h]arassment of an

---

The Court: Yes.

Mr. Radigan: I think there probably is some substance to what Mr. McNamara has said and I am sure that Mr. Cain probably feels the same, relative to his client. I think, Your Honor, in the interest of justice, probably, and so that there will be no element of possible prejudicial error, that maybe we ought to draw a new Jury.

Mr. McNamara: I hate to cause the delay, Your Honor, but____

The Court: No, you've got a duty to your client.

Mr. McNamara: That is the way I see it. That is what happened.

The Court: What do you say, Mr. Cain?

Mr. Cain: I say if all that is true, Your Honor, that a new Jury should be drawn from an entirely new panel.

The Court: Well, we can probably even get that. Yes, we can.

Mr. Cain: And I do concur with those sentiments. I think it would be most unlikely that these people would be able to be impartially tried by this panel.

Tr. 128–130.

accused by successive prosecutions or declaration of mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant. *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963).

The Supreme Court applied this test in *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1970). Defendant, who moved for mistrial when counsel of his choice was expelled from the trial after repeated improper conduct, moved for a mistrial rather than proceed with counsel unacceptable to him. Upon his retrial he was convicted. He sought to have the conviction overturned, arguing that his motion for mistrial was the result of a "Hobson's choice" and could not operate as a voluntary relinquishment of double jeopardy protection. The Court held that absent a showing that actions necessitating mistrial were "motivated by bad faith or undertaken to harass or prejudice" the defendant, double jeopardy considerations did not preclude a retrial. *United States v. Dinitz* at 611, 96 S.Ct. at 1081–1082.

█ There is no suggestion in the record presented by the parties to indicate that bad faith, overbearing or prejudice inspired the motion for mistrial advanced by counsel for the petitioner's co-defendant. The Government, counsel for the defendants, and the trial court itself, all concurred that an immediate trial before a new panel was essential to the elimination of any possible prejudicial effect introduced by the guilty pleas of the defendants VanBlericom and Kloberdance after the first trial was underway.

The petitioner argues that although consent to a mistrial may operate as a waiver of Fifth Amendment double jeopardy protection, a distinction must be made between the consent of the defendant and that of his attorney. Petitioner asserts that the constitutional protection against double jeopardy is so important and personal to the defendant that it cannot be waived by counsel. Only after a diligent inquiry by the trial judge, indicating that the accused understands, not only his right to be tried only

once, but also the consequences of his assent to a mistrial, can it be said that a defendant has waived his double jeopardy protection.

In support of his position, petitioner relies upor *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937) and the discussion of that case in *Schneckloth v. Bustamonte*, 412 U.S. 218, 235–238, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1972). In *Johnson* the Court held that the waiver of the right to counsel must be made knowingly, intelligently and voluntarily. In *Schneckloth* the Court noted, by way of exposition, that the criteria set forth in *Johnson* has been applied in the past to assess the ineffectiveness of a waiver of the right to be free from double jeopardy. *E.g., Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (no waiver by reason of successful appeal from conviction on a lesser offense). The petitioner's reliance on both these cases is misplaced in light of the fact that the Supreme Court rejected this very argument in *United States v. Dinitz, supra*, 424 U.S. at 607, 96 S.Ct. 1075. There, petitioner also urged that a valid jeopardy waiver must meet the knowing, intelligent and voluntary standard set forth in *Johnson*. The Court observed:

This approach erroneously treats the defendant's interest in going forward before the first jury as a constitutional right comparable to the right to counsel. It fails to recognize that the protection against the burden of multiple prosecutions underlying the constitutional prohibition against double jeopardy may be served by a mistrial declaration and the concomitant relinquishment of the opportunity to obtain a verdict from the first jury. The Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right. (citations omitted).

*Id.* n. 11 at 609–610, 96 S.Ct. at 1080–1081.

Since the Court's language in *Dinitz* is controlling, we find that petitioner waived his claim of double jeopardy when his coun-

sel assented to the mistrial. The mistrial was not ordered out of bad faith, nor was the declaration motivated by any of the factors referred to in *Jorn, supra.* To the contrary, the record is persuasive on the point that the mistrial order was inspired by a sincere desire to avoid any possible prejudice at the first trial that might have attended the change of plea by the petitioner's co-defendants. Accordingly, the petition for relief under 28 U.S.C. § 2255 is DENIED. SO ORDERED.