Jinks ADKINS, Jr., Petitioner,

v.

Donald BORDENKIRCHER, Superintendent, West Virginia State Penitentiary, Respondent.

Civ. A. No. 79–3128.

United States District Court, S. D. West Virginia, Huntington Division.

June 22, 1981.

Andrew S. Zettle, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., for petitioner.

Richard H. Glaser, Jr., Asst. Atty. Gen., for State of W. Va., Charleston, W. Va., for respondent.

### ORDER

DENNIS R. KNAPP, Chief Judge.

Upon consideration of the Findings and Recommendation of the United States Magistrate, Maurice G. Taylor, Jr., dated March 5, 1981, and the Supplemental Findings and Recommendations submitted by the Magistrate dated May 28, 1981, of the objections filed on behalf of the petitioner and those filed on behalf of the respondent, and upon *de novo* consideration, it is ORDERED:

(1) That the March 5, 1981 and the May 28, 1981 Findings and Recommendations, are accepted by the Court in all respects, the March 5, 1981, Findings and Recommendation being incorporated herein.

(2) That in addition to the Findings and Recommendation, the Court, after review of the record in this proceeding, finds those claims raised in the petition, but not decided by the Magistrate, to be without merit.

(3) That judgment shall be entered for petitioner and that petitioner's conviction be, and the same is hereby, declared null and void.

(4) The Court finding, in accord with the Findings and Recommendation of the Magistrate, that the Double Jeopardy Clause will not preclude retrial of petitioner, petitioner shall be released from custody to the extent that he is held as a result of the July 20, 1977 conviction for breaking and entering the Island Creek Store, provided, however, that petitioner may be continued in custody pending retrial within sixty days of the entry of this Order so that the State of West Virginia may, if it so choose, exercise its right to retry the petitioner.

(5) The Clerk is directed to mail a certified copy of this Order to petitioner, to respondent, and to all counsel of record.

### FINDINGS AND RECOMMENDATION OF THE MAGISTRATE

"Jinks Adkins, Jr., a state prisoner, convicted and sentenced in the Circuit Court of Logan County after trial on an indictment charging him with breaking and entering, is presently before this Court on petition for writ of habeas corpus. Petitioner seeks relief under the provisions of 28 U.S.C. § 2254, *et seq.*, alleging irregularities during the course of the state court proceedings claimed to be of constitutional magnitude.

Though a number of claims have been raised in this case, in light of the disposition of the constitutional issue arising from the giving of an alibi instruction, only the claims concerning the alibi instruction and the double jeopardy issue need be resolved. The facts, insofar as they are relevant to these two issues, may be summarized as follows:

In July of 1975 an Island Creek Company store was broken into and a safe was removed. A short time thereafter state police officers located the safe, which had been left, along with some tools, by the side of a creek in a rural area of Logan County. Believing that the thieves might return, the officers staked out the area. About two and one-half hours later a car with driver

and two passengers approached the area and petitioner and the other passenger were let out. Petitioner's brother, driving the car, left the area, however, petitioner and his companion walked straight to the location of the safe. While petitioner acted as lookout, his companion attempted, without success, to break open the safe. After observing these activities for a period of time, the officers arrested both men. Subsequent investigation indicated that a car owned by petitioner had bits of grey paint on the trunk which, upon analysis, were found to be similar to the grey paint on the safe casing removed from the store.

On September 8, 1975, a Logan County Grand Jury returned a three count indictment charging petitioner and another with breaking and entering, entering without breaking, and grand larceny. In each count of this indictment, which was assigned Criminal No. 1707, petitioner was charged with taking a safe, currency and checks of the total value of $5,324.77 belonging to "Island Creek Stores Company, a corporation" from a building owned by the same corporation. Sometime thereafter petitioner's co-defendant was tried and convicted. Though not entirely clear from the record, it appears that after conviction it was determined that the owner of the building and property had not been properly named in the indictment and the codefendant, who was already serving another sentence, was not sentenced on this conviction. In any event, in January of 1976, a Logan County Grand Jury returned a second indictment against petitioner and the same co-defendant, charging an offense identical to that charged in the earlier indictment. The only difference between the earlier and the subsequent indictment was that in the later indictment the building and the property taken from the building were identified as

belonging to "Island Creek Coal Company, a corporation, doing business in the Trade Name of Island Creek Stores Company". This later indictment was assigned Criminal No. 1723.

On December 16, 1976, a jury was impaneled and sworn to try petitioner on the charges contained in Criminal No. 1707.[1] Upon entry of a not guilty plea by the defendant, the jurors were excused, being directed to report at the beginning of the following week for trial. When the case was next taken up, one of the jurors failed to appear. It was determined that this juror's wife had been taken to the hospital and that he would not be able to report any earlier than the afternoon. The court informed counsel for defendant that a continuance would not be granted on motion of the prosecution but would be granted on motion of defendant. Counsel for the defendant then moved the court for a continuance. This motion was made with the understanding that the court would continue the case to a subsequent date at which time proceedings would begin anew, i. e., that the motion for a continuance would, in effect, result in a mistrial.[2] Though there is no order dismissing the jury or declaring a mistrial in the present record and, indeed, such an order may never have been entered, on July 20, 1977, trial commenced with a new jury being impaneled and sworn. This time, however, petitioner was tried on the charges contained in the more recent indictment, Felony No. 1723. The evidence of the prosecution, if believed, established essentially those facts set forth above. Petitioner's sole defense was based upon alibi witnesses, who testified concerning his whereabouts during the hours that the Island Creek Store was broken into and the safe stolen. Petitioner did not testify.

1. There is no explanation in the record for trying defendant on the earlier indictment. Presumably, a determination had been made, at least by the prosecutor, that the earlier indictment was defective. No evidence has been presented, however, which would indicate that the fact that proceedings were begun under No. 1707 affected subsequent events.

2. On the basis of counsel's explanation of his strategy in this case it is apparent that he held but faint hope of securing an acquittal and was relying on the possibility that the passage of time might affect, in some way, the prosecutor's ability to present its case. This strategy explains, for the most part, the seemingly inordinate delay in reaching trial.

In response to the alibi evidence presented at trial, the state tendered and the Court gave the following instruction:

"The Court instructs the jury that where the state has established a prima facie case and the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused."

Although counsel made a general objection to this instruction, there was no specific objection to the language imposing the burden of proving alibi on the defendant.

The grand larceny charge was dismissed by the court and the case was submitted to the jury on the counts charging breaking and entering and entering without breaking. The jury returned a verdict of guilty of breaking and entering and a one to ten year sentence was imposed by the Court. Thereafter, a petition for writ of error in the West Virginia Supreme Court was refused,[3] as was a petition filed under West Virginia's Post Conviction Habeas Statute. Subsequent to the evidentiary hearing in this proceeding another petition for habeas relief was denied by the West Virginia Supreme Court in a published opinion, *Adkins v. Leverette*, 264 S.E.2d 154 (W.Va.1980). As a consequence of this decision, claims not previously exhausted, including petitioner's double jeopardy claim, are now properly before the Court.

## EXHAUSTION OF AVAILABLE STATE REMEDIES

Before addressing petitioner's contention that the alibi instruction given at his trial

impermissibly shifted the burden of proof, respondent's allegations of waiver and failure to exhaust must be considered.

 A habeas petitioner is required to give state courts an opportunity to review constitutional challenges prior to seeking relief in the federal courts. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Where a claim has not first been presented to the state courts and, at the time of filing state remedies remain available, the doctrine of exhaustion normally requires dismissal. Exhaustion, however, is not a jurisdictional requirement, *Fay v. Noia*, 372 U.S. 391, 419–20, 83 S.Ct. 822, 838–39, 9 L.Ed.2d 837 (1963), and, though a claim has not been presented to the state courts and remedies remain available, nevertheless, under certain limited circumstances the doctrine will not bar consideration of the claim. In the present case, while a convincing argument can be made for the proposition that petitioner has not given the West Virginia Supreme Court a "fair opportunity" to consider the constitutionality of the alibi instruction, *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971),[4] presentation of this claim to the West Virginia courts would clearly be futile. In a very recent decision, *State v. Alexander*, 245 S.E.2d 633 (W.Va. 1978), the West Virginia Supreme Court approved an instruction identical to that given at petitioner's trial. Although respondent asserts, perhaps somewhat facetiously, that precedent is no barrier to change in West Virginia law, since the *Alexander* decision represents a very recent confirmation of a long line of West Virginia cases and since the composition of the Court has not substantially changed since it was rendered, the only reasonable conclusion to be reached is that the Court, if presented

---

**3.** Because an appeal was not perfected within the time permitted by statute, petitioner succeeded in obtaining relief in an earlier proceeding. The court in this instance resentenced petitioner so that he could timely file a petition for writ of error.

**4.** In his petition for writ of error to the West Virginia Supreme Court, petitioner did assert that the state had not proved "actual pres-

ence", and the *Mullaney* decision was mentioned in quoting an earlier decision of the West Virginia Supreme Court the thurst of petitioner's argument, however, seems to be more towards establishing error under state law and not, as is now the case, constitutional error in light of the requirements of *Mullaney* and subsequent Supreme Court cases.

with this same issue, would respond in a similar manner. Under such circumstances, an order directing petitioner to present this claim to the West Virginia Supreme Court prior to seeking relief in the federal courts would require the performance of a futile act, an act not required by the doctrine of exhaustion. *Perry v. Blackledge*, 453 F.2d 856 (4th Cir. 1971), *aff'd.* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

## DOCTRINE OF WAINWRIGHT V. SYKES

Respondent next contends that, though exhaustion may not require dismissal, nevertheless, this Court is precluded from reaching the merits of petitioner's claim since he failed to object to the instruction at trial or to raise a *Mullaney* type objection in his petition for writ of error submitted on direct appeal. As noted previously, counsel's objection to the alibi instruction at trial was stated in only the most general terms and, while a citation to *Mullaney* was contained in the brief submitted with the petition for writ of error, arguably, a burden-shifting *Mullaney* based claim was not "fairly presented" to the West Virginia Supreme Court on the direct appeal. Assuming, however, that this claim was not raised either at trial or on appeal, the question remains whether the rule set forth by the Court in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), bars consideration of the constitutionality of the alibi instruction in this habeas proceeding. Under the *Sykes* doctrine this Court, except in limited circumstances, will not review federal constitutional claims which the state courts have declined to consider, or would decline to consider, because not presented to those courts in accordance with state procedural law. Determining whether an "independent and adequate state procedural ground" bars relief, accordingly, requires an examination of state law, and, in particular, an examination of state procedure with regard to the necessity for objections to instructions and the effect of a failure to object.

The view of the West Virginia Supreme Court on the effect of a failure to object to instructions at trial, when it is later claimed on direct appeal that the instructions were violative of constitutional rights, was made plain by the court in *State v. Dozier*, 255 S.E.2d 552 (W.Va.1979). In that case *the defendant* tendered an instruction, given by the court, which, in a murder case, relieved the state of the burden of proving intent and shifted to the defendant the burden of establishing the absence of malice. Finding an exception to the doctrine of invited error, the court reversed the conviction based upon its determination that, where instructions are challenged on the basis of incompetency of counsel or violation of the Due Process Clause, the court will not find waiver of constitutional rights in the absence of an indication that the waiver was "knowing and intelligent". Further, unlike North Carolina [5] and some other jurisdictions, the West Virginia Supreme Court refused to adopt the suggestion of the Court in *Hankerson v. North Carolina*, 432 U.S. 233, 244 n. 8, 97 S.Ct. 2339, 2345 n. 8, 53 L.Ed.2d 306 (1977), that constitutionally based objections to burden-shifting instructions be considered barred unless objection was made at trial. The West Virginia Court has permitted habeas petitioners to raise objections to instructions where the constitutional right, was first declared subsequent to petitioner's trial. *Jones v. Warden*, 241 S.E.2d 914 (W.Va.1978).

Petitioners relying upon *Jones v. Warden* are admittedly in a somewhat different situation than the petitioner in this case since, unlike Jones, petitioner's trial occurred subsequent to the decisions of the Supreme Court in *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Hankerson v. North Carolina, supra.* This fact, however, ceases to be significant in view of the fact that the West Virginia Supreme Court has, until

---

5. *See, Cole v. Stevenson*, 620 F.2d 1055 (4th Cir. 1980), and North Carolina cases cited therein.

now, approved the alibi instruction.[6] Further, the West Virginia Supreme Court has apparently not attached significance to the chronology of cases. Thus, in *State v. Dozier, supra,* not only did defendant proffer the instruction, but he did this nearly two years after *Mullaney v. Wilbur* and about one year after the West Virginia Supreme Court's decision in *State v. Pendry,* 227 S.E.2d 210 (W.Va.1976). This latter case, establishing *Mullaney* principles with regard to instructions given in the state courts, condemns the so-called "deadly weapon" instruction, an instruction nearly identical to that given in the *Dozier* case.

Only one further barrier to consideration of the alibi instruction exists and that stems from the language of West Virginia's Postconviction Habeas Corpus Statute and a case construing the statute. The West Virginia statute, 53–4A–1(c), provides that claims "shall be deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions and grounds before trial, at trial or on direct appeal. . . ." In *Ford v. Coiner,* 156 W.Va. 362, 196 S.E.2d 91 (1972), a habeas proceeding, the defendant was convicted of murder, however, the jury verdict failed to specify whether the conviction was for first or second degree murder. This deficiency was brought to the attention of the court and counsel by the prosecuting attorney, however, the verdict was never amended. After having been declared guilty of first degree murder and sentenced by the court to life imprisonment defendant failed to object to the form of the verdict on direct appeal. Finding that the deficiency was apparent and that the defendant "intelligently and knowingly failed to advance" this error on direct appeal, the court held that any claim for relief based upon the form of the jury verdict was waived. The value of this case as precedent for barring petitioner from habeas relief based upon his failure to raise the alibi instruction on direct appeal is diminished by the fact that the court in the *Ford* decision specifically characterized the proceedings as being free of constitutional error.[7] The only case touching upon this question in which both the Post Conviction Act and *Ford v. Coiner* were considered is *Spaulding v. Warden,* 212 S.E.2d 619, 621 (W.Va.1975), a habeas case in which the petitioner had failed to appeal his conviction. *Ford v. Coiner* was cited by the Court for the proposition that error, other than that having a constitutional or jurisdictional basis, was waived as a consequence of the failure to appeal. Having made the distinction between constitutional and other error, the court then proceeded to resolve the constitutional issues on the merits.

In summary, it is apparent that the West Virginia Supreme Court has been loath to find waiver of constitutional error whether the proceedings under review were on direct appeal or by petition for writ of habeas corpus. The court has not relied on the procedure suggested in footnote 8 in *Hankerson v. North Carolina* and similarly has apparently chosen not to rely upon the language of the post-conviction statute to bar consideration of constitutional claims raised in collateral proceedings. While the dissent in *Ford v. Coiner* indicates to the contrary, the court has also adhered to the "knowing and intelligent" standard set forth in *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461

---

6. Once the constitutional infirmity of the alibi instruction is established, presumably the West Virginia Court will, as was done in *Jones v. Warden, supra* at 916, refuse to insulate past convictions, placing emphasis on the "integrity of the fact-finding process . . . over procedural concerns. . . ."

7. It is recognized, of course, that the dissent in *Ford v. Coiner,* characterized the error as constitutional as well as jurisdictional, however, the important fact in determining the effect of the decision would seem to be that the majority of the court, in relying on the habeas statute to preclude relief, was acting under the assumption that it was dealing with a type of error other than constitutional error. But, see Nichol, *Waiver Under the West Virginia Habeas Corpus Act,* 81 W.Va.L.Rev. 393 (1979).

(1938)[8] in resolving questions concerning waiver of fundamental constitutional rights. Under such circumstances, this Court finds that petitioner would not be barred from seeking relief on the constitutional claim in the state courts and, accordingly, is not barred under the doctrine of *Wainwright v. Sykes* from seeking relief in the federal courts.

## CONSTITUTIONALITY OF ALIBI INSTRUCTION

Having determined that the constitutionality of the alibi instruction is properly before the Court, the issue which must now be resolved is whether, in light of the requirements of *In Re Winship, supra, Mullaney v. Wilbur*, supra, and *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), this instruction had the effect of impermissibly shifting to petitioner the burden of proof of an element of the offense of breaking and entering, thereby relieving the state of its obligation to prove beyond a reasonable doubt every fact necessary to constitute that crime. This issue was faced by the West Virginia Supreme Court in *State v. Alexander*, 245 S.E.2d 633 (W.Va. 1978), a direct appeal from an armed robbery conviction. In denying defendant relief on his claim that an alibi instruction, identical to the one given in this case, unconstitutionally shifted the burden of proof, the court relied upon its characterization of this defense as an "affirmative defense" and upon established West Virginia law providing that an alibi defense does not relieve the prosecution of proving the actual presence of a defendant beyond a reasonable doubt. To determine whether the court was correct in this regard it must first be determined whether the allegedly offending instruction did, in fact, place any

burden on petitioner. If no burden was placed on petitioner then, of course, there is no *Mullaney* issue.

■ By its instruction, the court told the jury that, where the state "has established a prima facie case"[9] and the defendant relies upon the *defense of alibi* "the burden is upon him to prove it. . . ." The court then proceeded to explain the degree of conviction or belief defendant was required to establish in the jurors' minds, informing them that the defendant was not required to prove his alibi beyond a reasonable doubt or by a preponderance of the evidence, "but by such evidence, and to such a degree of certainty, as will when the whole evidence is considered, create and leave in the minds of the jury a reasonable doubt as to the guilt of the accused." Clearly, by this instruction, the court was imposing a burden of persuasion and not simply a burden of production. The petitioner in this case, unlike defendants in those cases where alibi instructions have been found not to offend the Due Process Clause, was required by the instruction to "prove" alibi by creating in the minds of the jurors a reasonable doubt with respect to his presence at the breaking and entering of the Island Creek store.[10]

Having determined that the instruction, in fact, imposed a burden of persuasion and not simply one of production, it must now be determined whether an alibi defense is an affirmative defense as characterized by the West Virginia Supreme Court and as that concept was understood by the Court in *Patterson v. New York*. In the *Patterson* case, the Court recognized the legitimacy of imposing the burden of persuasion of an affirmative defense upon defendants. *Patterson* was charged with second degree

---

**8.** See, *State v. Blosser*, 207 S.E.2d 186, 189 (W.Va.1974); *State v. Dozier, supra* at 555.

**9.** The judge in this part of his instruction was presumably informing the jury that he had determined that the state, by its evidence, had satisfied its "burden of production" and that the issue of guilt would be given the jury for decision. No explanation was given the jurors and it would be difficult indeed to determine

what interpretation they gave the phrase "prima facie".

**10.** In contrast to petitioner's burden, *see Poole v. State of Georgia*, 551 F.2d 683 (5th Cir. 1977) and *Hunter v. Williams*, 570 F.2d 510 (4th Cir. 1978), cases in which alibi instructions were found not to have imposed any burden of persuasion on defendants.

murder, defined by New York statutory provisions as encompassing "intent to cause death of a person" and "causing the death of such person or of a third person." Malice aforethought was not an element of the crime. The statutory provisions defining second degree murder further provided that an affirmative defense to this charge could be established by evidence that a defendant "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." The burden of persuasion with respect to this defense required a defendant to convince the jury that he had acted under extreme emotional disturbance by a preponderance of the evidence. The jury in *Patterson* was instructed that, if it found beyond reasonable doubt that the defendant "had intentionally killed Northrop" and also found that the defendant had demonstrated by a preponderance of the evidence that he acted under extreme emotional disturbance, it was to find him guilty of manslaughter instead of murder. The jury found Patterson guilty of murder.

Noting that at the time of the adoption of the Fifth Amendment as well as at the time of ratification of the Fourteenth Amendment, the common law rule placed the burden of proving "all ... circumstances of justification, excuse or alleviation" on the defendant, the court found that the placing of the burden of persuasion of an affirmative defense on Patterson did not offend principles embodied in the Due Process Clause of the Fourteenth Amendment. The court reaffirmed its prior holdings requiring the state to prove all elements included in the definition of the offense beyond reasonable doubt, but refused to extend that requirement to proof of the non-

existence of all affirmative defenses. The distinguishing characteristic of the defense of extreme emotional disturbance, resulting in its characterization as an affirmative defense and relied on by the court in affirming the conviction, was that proof of the mental infirmity did not "serve to negative any facts of the crime which the state is to prove in order to convict of murder." *Patterson v. New York, supra* 432 U.S. at p. 207, 97 S.Ct. at 2325. Thus, this defense met the requirements of the definition normally given affirmative defenses, i. e., admission of guilt of the acts charged with some excuse or justification for performance of those acts. From an analysis of the alibi defense, it is apparent that it neither conforms to the requirements of the definition ordinarily given affirmative defenses or to the criterion upon which the Supreme Court based its approval of the imposition of the burden of establishing extreme emotional disturbance in *Patterson*.

■ The principal distinction between the affirmative defense of extreme emotional disturbance and the alibi defense is simply this: while it was possible, under New York law, to establish both the elements of the crime of second degree murder and the defense of extreme emotional disturbance, it is not logically possible, where presence is required, to establish both the elements of a crime and an alibi defense.[11] Thus, in contrast to the affirmative defense considered in *Patterson v. New York*, proof of alibi does "serve to negative ... facts of the crime which a state is to prove in order to convict ...." This distinction has been recognized in the great majority of the cases reviewing the constitutionality of alibi instructions.[12] Unquestionably an alibi de-

11. The Court recognizes, of course, that, under an instruction of the court, petitioner could have been convicted if the breaking and entering was the result of his acting in concert with a co-defendant and that, theoretically at least, the jury could convict even if it found defendant not present. This case, however, was tried and argued by the prosecution on the premise that petitioner did break and enter the store or at least was present at the scene. The prosecutor, in offering this instruction, informed the court that it was given because the state could not prove, by direct evidence, that one or the other of the two defendants actually entered the store and he did not want the jury to assume that the state was required to establish this fact.

12. *See, Stump v. Bennett*, 398 F.2d 111, 115 (8th Cir. 1968) (En Banc), *cert. denied* 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968); *Graham v. Maryland*, 454 F.Supp. 643, 650 (D.Md. 1978); *Robertson v. Warden, Maryland Peni-*

fense is not an affirmative defense as that concept is generally understood, i. e., excuse, justification, or mitigation, offered as a defense after admitting, in effect, the acts charged. It is equally clear that the alibi defense is only another way of denying guilt of the offense charged. The state has the burden of persuasion and attempts to prove that a defendant was present at a time when and a place where the crime charged was committed. By his alibi defense, a defendant denies that this was so. When viewed in this light, constitutional infirmity in the alibi instruction becomes apparent. In instructing the jury that a defendant has the burden of proving alibi, by creating a reasonable doubt concerning his whereabouts, the court is in effect requiring a defendant to establish reasonable doubt of his guilt of the crime charged and to this extent lessening or abrogating the burden of the state to prove all elements of the offense, including presence, beyond a reasonable doubt. This the state cannot do.

▇ The Court recognizes, of course, that habeas relief is ordinarily not appropriate when based upon a single, challenged jury instruction. Relief in such circumstances is available only where, after reviewing all the instructions, it can be said that the offending instruction is so oppressive as to render a trial fundamentally unfair, thereby denying petitioner due process. *Reeves v. Reed*, 596 F.2d 628, 629 (4th Cir. 1979). From a review of the instructions, it is apparent that, at the very least, the alibi instruction must have been confusing to the jury, particularly in the absence of any instruction clearly setting forth the elements of the crime charged and instructing the jurors that the prosecution had the burden of proving each of these elements beyond a reasonable doubt. The jury was told in a general instruction that it was incumbent upon the state "to establish defendant's guilt by proof so clear and convincing and satisfying in its nature as to convince

the jury of his guilt beyond all reasonable doubt...." A second instruction directed the jurors to find defendant not guilty "if the prosecution fails to prove beyond a reasonable doubt every material allegation in the indictment...." The difficulty with determining that these instructions "cured" any misconceptions resulting from the alibi instruction is that such a determination would require the court to assume that the jurors simply ignored the more specific alibi instruction and reached their decision only on the basis of the general instructions of the court. Nothing in the record of this case or the Court's experience would support such an assumption. *See, United States v. Mogavero*, 521 F.2d 625, 628 (4th Cir. 1975).

▇ Finally, the question remains whether, though error of constitutional magnitude be admitted, such error, in the context of this case, can be characterized as harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *reh. denied* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). The evidence presented at trial can fairly be characterized as overwhelmingly establishing petitioner's guilt of some crime. Whether he broke and entered the store and removed the safe or only became part of this enterprise after the safe had been removed to a rural area in Logan County is not so clear. The alibi testimony, the only evidence put on in petitioner's behalf, if believed would have seriously eroded the prosecutor's case against petitioner on the charge of breaking and entering. Yet on this issue the court imposed a burden of persuasion which clearly could have been interpreted by the jury as relieving the state of its obligation to establish presence.

In resolving the harmless error issue, account must also be taken of the fact, noted in a number of cases, that alibi instructions which require a defendant "to

*tentiary,* 466 F.Supp. 262, 264 (D.Md.1979), *aff'd.* on other grounds in an unpublished opinion, 624 F.2d 1095; *Rogers v. Redman,* 457 F.Supp. 929, 932 (D.Del.1978). See also, *Johnson v. Bennett,* 393 U.S. 253, 89 S.Ct. 436, 21

L.Ed.2d 415 (1968), remanding in light of *Stump v. Bennett, supra,* and *Johnson v. Bennett,* 414 F.2d 50 (8th Cir. 1969), the decision of the court on remand.

prove" or to "establish" alibi,[13] not only shift the burden of persuasion in violation of *Mullaney* principles, but also violate a defendant's "corollary right to a presumption of innocence." *Rogers v. Redman, supra* at p. 933, fn. 4; *Graham v. Maryland, supra* at p. 651; *Stump v. Bennett, supra* at p. 116. The reasonable doubt standard, the measure of persuasion imposed in criminal prosecutions as an expression of the degree of certainty the state must establish in the minds of the trier of fact, "provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *In Re Winship, supra* 397 U.S. at p. 363, 90 S.Ct. at 1072. As a consequence of the relationship between burden of proof and the presumption of innocence, some courts have held that the shift in the burden of proof resulting from alibi instructions can never be considered harmless constitutional error. *See, Graham v. Maryland, supra* at p. 651. Whether or not this is a correct application of the principles set forth in *Chapman v. California, supra*, from a review of the record in the present case it is clear that this Court cannot declare beyond reasonable doubt that the giving of the alibi instruction was harmless error.

Under such circumstances, after review of the evidence presented at trial and the instructions given the jury by the court, it is simply not possible to conclude that the jury correctly understood the state's burden of proof and resolved the issue of petitioner's presence in a manner consistent with requirements of due process, or that the giving of the alibi instruction, and the resultant shift of the burden of persuasion of

a material element of the crime charged, was harmless beyond reasonable doubt. Accordingly, petitioner's conviction for breaking and entering the Island Creek Company Store must be set aside.

### DOUBLE JEOPARDY

■ Since the Court has determined that petitioner's breaking and entering conviction must be set aside, the double jeopardy claim, presented to and denied by the West Virginia Supreme Court while this case was pending, must be decided. The record before the Court, insofar as it bears on this claim, is the same as that before the West Virginia Supreme Court and, in the absence of any basis for questioning the court's resolution of the factual issues, the findings of fact of the West Virginia Supreme Court "shall be presumed to be correct." 28 U.S.C. § 2254(d); *see, Summer v. Mata,* 449 U.S. 764, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

In its decision denying relief the West Virginia court found a waiver of double jeopardy protection based upon its determination that waiver was implicit in the motions for continuance made by counsel prior to petitioner's trial in Criminal No. 1723 and that the motions by their very nature "implied a resumption of the proceedings at a later date, not an abandonment of them...." *Adkins v. Leverette,* 264 S.E.2d 154 (W.Va.1980). As has been noted earlier, the discharge of the jury was contemplated by counsel for petitioner and, though his motion was designated as one for a continuance, it was in essence, and certainly in effect, a motion for mistrial. Whether this was understood by petitioner was not determined by the West Virginia Supreme Court, however, petitioner has taken the position that he never sought a

---

**13.** Respondent has asserted that this case is distinguishable from other cases since West Virginia only requires a defendant to establish a reasonable doubt, while in other jurisdictions the jury is instructed that a defendant is required to establish alibi "to the reasonable satisfaction of the jury" or "by a preponderance of the evidence." The constitutional infirmity does not, however, stem from the quantum of proof required but from the fact that a defendant has been required to accept the burden of

persuasion of an essential element of the crime charged. As was pointed out by the Court in *Smith v. Smith,* 321 F.Supp. 482, 489 (N.D.Ga. 1970), *aff'd.* 454 F.2d 572 (5th Cir.), *cert. denied* 409 U.S. 885, 93 S.Ct. 99, 34 L.Ed.2d 141, "being an essential element of the crime, the state must prove beyond a reasonable doubt defendant's presence at the commission of the offense. It is impermissible to require the defendant to prove his non-presence by any definite quantum of proof."

mistrial nor was he aware that one had occurred. His understanding of the proceedings, it is asserted, was only that on numerous occasions his case had been continued.

■ There can be no question, of course, but that jeopardy attached with the swearing of the jury to try petitioner on Felony Indictment No. 1707. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Further, as was conceded by the Supreme Court, the subsequent trial on Felony Indictment No. 1723 involved an offense identical to that charged in 1707. Accordingly, in the absence of some basis for finding petitioner not entitled to its protection, trial in Criminal No. 1723 would have violated the Double Jeopardy Clause and retrial now would be prohibited. Though not adopting the concept of waiver applied by the West Virginia court, nevertheless, this Court finds that, under established principles applicable to jeopardy claims, petitioner may be retried for breaking and entering without offending either those principles or the policy underlying the protections afforded by the Double Jeopardy Clause.

■ The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), protects a criminal defendant against repeated prosecutions, as well as multiple punishments, for the same offense. *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). At common law questions of double jeopardy normally arose after conviction or acquittal, however, under the Constitution jeopardy attaches prior to judgment, *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977), and as a consequence, double jeopardy protections are implicated when, as in this case, trial is terminated without a verdict. Termination prior to judgment may

offend the constitutional protection accorded "a defendant's valued right to have his trial completed by a particular tribunal", *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), coming into conflict with the idea, underlying the language set forth in the Double Jeopardy Clause, "that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States, supra* 355 U.S. at p. 187, 188, 78 S.Ct. at p. 223, 224.

■ Though the right not to be tried twice for the same offense is fundamental, nevertheless, not every retrial following conviction, *United States v. Ball*, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896), or after termination prior to judgment, *United States v. Perez*, 9 Wheat. 579, 6 L.Ed. 165 (1824), is barred. With regard to a termination of trial prior to judgment, *United States v. Perez, supra* at p. 580, established that, where such termination occurs without defendant's request or consent, retrial is permissible only when there was "a manifest necessity for the act, or the ends of public justice would otherwise be defeated." A clear distinction is recognized, however, between those situations in which trial is aborted by the court *sua sponte* or on motion of the prosecution and those in which trial terminated "at the defendant's request or with his consent." *United States v. Dinitz*, 424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976). Where termination occurs under the latter circumstances retrial is not prohibited by the Double Jeopardy Clause.[14]

■ Applying these principles to the facts of the present case, it is apparent that, though counsel did not specifically request a

---

14. Even in this instance retrial may be prohibited if the request or consent was the result of "bad-faith conduct by the judge or prosecutor". *United States v. Dinitz, supra* 424 U.S. at p. 611, 96 S.Ct. at p. 1081. There is, however, no evidence of any such bad-faith conduct in this case.

mistrial or ask that the proceedings be terminated, his motion and the consequent granting of the continuance and discharge of the jury in Criminal No. 1707 was "functionally indistinguishable", *Lee v. United States*, 432 U.S. 23, 31, 97 S.Ct. 2141, 2146, 52 L.Ed.2d 80 (1977), from a request for declaration of mistrial and was so understood by him. *See, United States v. Scott*, 437 U.S. 82, 94, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978); *United States v. Harris*, 542 F.2d 1283, 1314 (7th Cir. 1976); *Sedgwick v. Superior Court for the District of Columbia*, 584 F.2d 1044, 1046–48 (D.C.Cir. 1978), *cert. denied* 439 U.S. 1075, 99 S.Ct. 849, 59 L.Ed.2d 42 (1979). Termination of the trial may, therefore, fairly be characterized as having occurred not only with the consent [15] of counsel for petitioner, but, in fact, at his request.[16] It necessarily follows that trial in Criminal No. 1723 did not violate the provisions of the Double Jeopardy Clause. That retrial is permitted does not result from any finding that petitioner "waived" his right to double jeopardy protection for, as was pointed out in *United States v. Dinitz, supra* at p. 609, 610, fn. 11, 96 S.Ct. at p. 1080, 1081, fn. 11, principles of waiver are not an appropriate criterion for use by the Court in determining whether, in a particular case, retrial is permissible. See also, *Benton v. Maryland, supra* 395 U.S. at p. 811, 812, 89 S.Ct. at p. 2071, 2072 (Harlan, J. Dissenting); *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). Petitioner had a "valued right", protected by the Double Jeopardy Clause, to have his guilt determined by the jury chosen in Criminal No. 1707, however, counsel's action, ultimately resulting in discharge of the jury and trial in Criminal No. 1723, deprived him of any right he might have had against retrial. Under such circumstances there can be no claim that the state with all its resources is making repeated attempts to convict petitioner or subjecting him to the embarrassment, expense and ordeal of retrial, *Green v. United States, supra* 335 U.S. at p. 187, 78 S.Ct. at p. 223, and, as a consequence, his "valued right" must be found "subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). As was pointed out by the Court in *United States v. Scott*, 437 U.S. 82, 96, 98 S.Ct. 2187, 2196, 57 L.Ed.2d 65 (1978), when the government is willing to continue its prosecution but defendant has elected to seek termination of the trial on grounds unrelated to guilt or innocence, a court reviewing a double jeopardy claim is clearly not faced with "a picture of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact." In the absence of bad-faith conduct by the judge or prosecutor, the protection afforded by the Double Jeopardy Clause does not extend to a defendant who has chosen, as in this case, to abort his trial.

■ The only remaining question arises from the fact that petitioner, in contrast to his counsel, understood only that a continuance was being granted and was not informed that the jury would be discharged and a new trial set. In a number of cases this issue has been addressed by the courts and it has been uniformly held that defendant need not have given personal consent to the motion terminating trial. It is suffi-

---

**15.** Even if it could be successfully argued that the mistrial was not at the request of counsel for defendant, and that appears doubtful, termination can be characterized, at the very least, as having been declared with his consent. *See, United States v. Bobo*, 586 F.2d 355, 365 (5th Cir. 1979).

**16.** The judge did inform counsel that he would not grant a continuance on motion of the prosecution but would on motion of the defendant. Counsel for defendant then obligingly moved the court for a continuance. There was certainly no coercion in this exchange for, as counsel has explained, delay may very well have been his principal defense and a continuance, rather than waiting for the missing juror, was to his advantage. The important fact is that termination was in response to defendant's motion and not, of course, that in this instance mistrial was advantageous to him. *See, United States v. Jorn*, 400 U.S. 470, 483, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971).

cient if trial was terminated on motion of counsel for defendant or with his consent. *See, Jeffers v. United States,* 461 F.Supp. 300 (N.D.Ind.1978); *United States v. Rathburn,* 472 F.Supp. 17 (D.Vt.1979); *United States v. Bobo, supra* at p. 366. Requiring only that counsel request or consent protects a defendant from multiple prosecutions brought about by government misconduct and at the same time protects the public's "right to 'one complete opportunity to convict those who have violated its laws.'" *United States v. Scott, supra* 437 U.S. at p. 100, 98 S.Ct. at p. 2198. Accordingly, retrial in Criminal No. 1723 was not barred as a consequence of the fact that petitioner had not given his consent to termination in Criminal No. 1707.

## RECOMMENDATION

In view of the fact that an instruction given by the court contravened the requirements of the Due Process Clause and that this constitutional error cannot, under the circumstances of this case, be found harmless beyond a reasonable doubt, it is RESPECTFULLY RECOMMENDED that the Court declare petitioner's conviction null and void, staying the issuance of its writ for a period of sixty (60) days so that the State of West Virginia may, if it so chooses, exercise its right to retry petitioner. In view of the fact that petitioner may presently be incarcerated on more than one conviction, the order of the Court should provide that, if petitioner is presently being held on convictions other than the conviction at issue in this case, granting relief will not require his release from custody."

(6) In the event that petitioner and/or respondent wish to appeal this decision, they should file notice of such appeal, together with an application for a certificate of probable cause, with the Clerk's Office of this Court on or before thirty (30) days from the date of the entry of this Order, and such notice of appeal and request should be filed in duplicate.

(7) All matters in this case being concluded, this action is hereby ORDERED dismissed and retired from the Court's docket.