# CHARLESTON.

## STATE *v.* E. J. BENNETT.

Submitted March 13, 1923.    Decided April 17, 1923.

1.  CRIMINAL LAW—INDICTMENT AND INFORMATION—*Method of Requiring State to Elect on Which Violation it Will Rely for Conviction Stated.*

    Under an indictment charging the defendant with unlawfully having in his possession moonshine liquor, the State is not

confined to the date of commission alleged, but may show one
or more violations within the statute of limitations, and if
the defendant desires to restrict the prosecution to the evi-
dence relating to one violation, he should, after the State's
conclusion in chief, first move the court to require an election
by the State of the violation upon which it will rely for con-
viction, and then move the exclusion of all evidence relating to
other violations. (p. 552).

2.  SAME—*Circumstantial Evidence Must to Moral Certainty Ex-
    clude Every Hypothesis, Save that of Guilt, in Order to Con-
    vict.*

    To convict on circumstantial evidence alone, it should to
    a moral certainty exclude every hypothesis but that of guilt;
    and circumstantial evidence should always be scanned with
    caution. (p. 552).

Error from Circuit Court, Fayette County.

E. J. Bennett was convicted of unlawful possession of
moonshine liquor, and he brings error.

*Reversed and remanded.*

*C. R. Summerfield* and *C. E. Mahan, Jr.,* for plaintiff in
error.

*E. T. England,* Attorney General, *R. Dennis Steed,* Assistant
Attorney General, *W. G. Brown, State Prohibition Commis-
sioner,* and *George Love,* for the State.

LITZ, JUDGE:

Defendant, on May 12th, 1921, in the circuit court of
Fayette county, was tried, convicted and sentenced to con-
finement at hard labor in the county jail for a period of 90
days and adjudged to pay a fine of $100 and costs, on an in-
dictment charging him with unlawfully having in his posses-
sion a quantity of moonshine liquor. Complaining of the
toils of the law, he assigns several grounds of error, with
special dependence upon the insufficiency of the evidence to
warrant the verdict.

The evidence upon which the State relies for a conviction,
involving two transactions or events, is as follows:

(1)  In the month of December, 1921, the defendant, with
five other men, including the driver, left the town of Fayette-

ville soon after noon in an automobile for Falls Branch, ten or twelve miles distant in the country, the defendant taking along with him a repeating Remington shotgun he had recently acquired at the price of $67.50 in trade. In the near vicinity of Falls Branch, where they finally parked their car, lived the Abbot family. The father, Lafe Abbot, and the sons, John, William and Charlie, resided, in separate houses, within a radius of a few hundred feet. Here the defendant left the car and, taking his shotgun, went to the home of Charlie Abbot, where he claims to have bought two gallons of molasses in a two-gallon earthen jug, and left the gun. He placed the jug in a feed sack, and started for the car. On his way he stopped at the home of John Abbot, to discuss with John the purchase of his two mules, (which purchase was later consummated), and reached the car with his baggage after an absence of twenty or thirty minutes.

In the meantime others of the party had gotten out of the automobile and walked away. They all started back to Fayetteville in the car after this stop of probably thirty minutes, with the jug in the sack and a quart of moonshine liquor in the possession of one of the crowd other than the defendant; the defendant, the driver, and another occupying the front seat while the remaining three, one of whom possessed the moonshine, sat in the rear. On reaching the home of defendant, he or some one in the party carried the sack containing the jug into his house.

It is the State's theory that the jug contained moonshine liquor, for which the defendant traded his shotgun to Charlie Abbot. There is no claim that the quart of moonshine carried by one of the persons in the rear seat of the automobile belonged to the defendant, or that it was ever in his possession. It does not appear from whom it was obtained.

There is no direct evidence that the jug contained liquor. On the other hand, the defendant and three or four of the Abbots testify that it was filled with molasses. Nor is there any proof that the defendant bartered his $67.50 shotgun to Charlie Abbot for two gallons of moonshine liquor. They both testify that the gun was lent to Abbot for hunting purposes.

The prosecution offered evidence tending to show that

about the time of this transaction Charlie Abbot sold liquor to other persons and also some time prior thereto several gallons of liquor had been found in a small barrel buried near the home of Lafe Abbot. The defendant offered, but was not permitted, to show that both Abbots had been tried and acquitted on these charges.

(2) Late one afternoon, during the month of September, 1921, the defendant, accompanied by Mason Arthur, in a Ford automobile, rode into the town of Fayetteville: and being informed by Marshall Miller that the defendant's father desired to be taken home by defendant in his (defendant's) Paige car, defendant requested Miller to take Arthur in the Ford to the latter's home, about two miles out of town. Miller immediately took charge of the Ford, driving it away in company with Arthur. After going about 150 yards to the forks of the road, Arthur got out and started walking home, while Miller, turning off the main road, proceeded by another route. Some time later Miller returned to the main road, and after going about one-fourth mile beyond town, wrecked the car against a fence. After the wreck, the car within and the road or sidewalk beneath was damp, giving forth the odor of liquor. Also a pint bottle, half filled with liquor, was found a few feet away. A witness for the State who was within twenty feet of the car when it wrecked, saw one of the two men in the car throw something, resembling a sack, across the fence in the brush, and heard a crash like the breaking of glass. The next morning the sack was found in the brush just across the fence, containing broken glass jars about which there was an odor of liquor. The man with Miller at the time of the wreck is not accounted for. Evidently Miller had picked him up after discharging Arthur at the forks of the road.

The State gives recognition to this incident upon the theory that the liquor was in the car when Miller took charge. There is, however, no direct proof of this claim. Miller, who was introduced as a witness for the State, was in jail at the time of his testimony. He had also been indicted for having this liquor, and was intoxicated at the time of the wreck. He evidently obtained the liquor somewhere "on his way" after leaving Mason Arthur.

Counsel for the defendant insist that the evidence involving this incident in September is improper as tending to prove an offense at the time other than that alleged in the indictment. This view is incorrect. The State may prove the commission of the offense at any time within the statute of limitations. If the defendant desired the exclusion of all evidence except that directly relating to one commission of the offense charged, he should have first moved the court, after the State's conclusion in chief, to require an election by the State upon which of the two alleged commissions in evidence it would rely for conviction, and then moved the exclusion of all evidence as to the other. *State* v. *Calhoun,* 67 W. Va. 666, 69 S. E. 1098; *State* v. *Chisnell,* 36 W. Va. 664, 15 S. E. 412; *Loftus* v. *Commonwealth,* 3 Gratt. 631, Anno. 808; *State* v. *Bailey,* 75 W. Va. 250, 83 S. E. 910; *State* v. *Baker,* 93 W. Va. 115 S. E. 860.

As the evidence relied on by the State is entirely circumstantial, what are the rules governing the ascertainment and determination of the guilt of an accused in such case?

First: It is essential that all the circumstances from which the conclusion is to be drawn shall be established by full proof, and the party upon whom the burden of proof rests, is bound to prove every single circumstance which is essential to the conclusion, in the same manner and to the same extent as if the whole issue had rested upon the proof of each individual and essential circumstance.

Second: All the facts and circumstances, when established by full proof must be consisent with the hypothesis of the guilt of the accused.

Third: It is essential that the circumstances should be of a conclusive nature and tendency. Evidence is always indefinite and inconclusive when it raises no more than a limited probability in favor of the fact, as compared with some definite probability against it, whether the precise proposition can, or can not be ascertained. It is, on the other hand, of a conclusive nature and tendency, when the probability in favor of the hypothesis exceeds all limits of an arithmetical or moral nature. Such evidence is always insufficient where, assuming all to be proved which the evidence tends to prove, some other hypothesis may still be true; for it is the actual exclusion

of every other hypothesis, which invests mere circumstances with the force of proof. Whenever therefore the evidence leaves it indifferent which of several hypothesis is true,. or merely establishes some finite probability in favor of one hypothesis rather than another, such evidence can not amount to proof, however great the probability may be.

Fourth: It is essential that the circumstances should to a moral certainty actually exclude every hypothesis but the one proposed to be proved. State v. Flanagan, 26 W. Va. 122.

Applying these principles, we are of the opinion that the circumstances of neither nor both of the incidents in evidence are sufficient to justify or sustain the verdict.

With reference to the December incident, the attorney general points out only two circumstances on which the jury could have acted in determining that the concealed jug carried by the defendant contained moonshine liquor: (1) That the Abbots, according to the evidence, were selling, or had been selling, moonshine liquor; and (2) that one of the persons with the defendant on the occasion obtained some moonshine liquor.

In this connection we are told that it was for the jury to make its own deductions, to pass on the credibility of the witnesses, and determine whether or not under the circumstances of the case the defendant had moonshine liquor in his possession at that time.

It is true that in determining whether or not the evidence is sufficient to support the verdict it must be regarded in the light of the rule that the appellate court will not reverse the judgment of the trial court sustaining the verdict of the jury unless, after rejecting all the conflicting evidence of the exceptor and giving full faith and credit to that of the adverse party, the judgment still appears to be wrong. But this does not mean that the jury exercises an unbridled discretion. It is amenable to the rule that governs cases depending upon circumstantial evidence: To convict on circumstantial evidence alone, it should to a moral certainty exclude every hypothesis but that of guilt.

The positive evidence of the defendant and his witnesses that the jug contained molasses is not in conflict with any direct evidence of the State. The alleged circumstance that

the Abbots were selling, or had been selling, moonshine liquor, *if admissible,* would be of little if any weight in view of their trials and acquittals on these charges which were proper to have been shown; nor is the circumstance that one of the party obtained liquor on the occasion sufficient to justify the inference that the defendant also obtained liquor at that time. If so, then it might as well be inferred that still others in the party had liquor in their possession. It is not shown that the quart of liquor was obtained from the Abbots, but the evidence tends to show that it came from some other source.

In discussing the September incident, it is stated that Miller "had proceeded only a short distance (after the defendant had directed him to drive the Ford automobile) when the car was wrecked, containers of the liquor broken, and the liquor run out upon the ground, which liquor was unquestionably moonshine liquor." The case of *State* v. *Hussion,* 91 W. Va. 146, 112 S. E. 309, and *State* v. *Snodgrass,* 91 W. Va. 553, 114 S. E. 136, are cited in support of the statement that the liquid detected in and under the car after the wreck was moonshine liquor. That question, however, is not in issue as the defendant, who came to the wreck soon after it occurred for the purpose of removing the car, agrees with the witnesses for the State that this liquid in his opinion was moonshine liquor.

Assuming that the car contained liquor at the time of the wreck, the State relies upon the inference that it was in there when the car was turned over to Miller. This inference might well be drawn, if the statement that the car had only been driven a short distance when the wreck occurred was true. The evidence, however, as we see it, shows clearly that Miller had driven for some distance off the main road, and after returning, had gone a quarter of a mile or more beyond town before the wreck, in the meantime discharging Mason Arthur, whom he had been directed by the defendant to take home, and picking up the other man who was with him in the wreck.

The prosecution finally takes the position that under the authority of the case of *State* v. *McLaughlin,* 91 W. Va. 262, 114 S. E. 278, the circumstances in this case are sufficient to sustain the conviction. An examination of that case, how-

ever, will disclose a situation very different from the one here presented.

The defendant there, who was at the time in question under the influence of whisky, proposed to sell liquor to several persons. After hiding a half gallon fruit jar filled with a white liquid resembling moonshine liquor, which was found by some one and removed, defendant said it was his liquor and became angry, threatening the one who had taken it. We can see how the jury, under such evidence, was well warranted in finding the defendant guilty, although no witness testified to having tasted or smelled the liquor.

In the case at bar there is no evidence that the jug contained anything, except the evidence of the defendant and his witnesses, that it was filled with molasses. This case is somewhat similar to our recent case of *State* v. *McHenry*, decided this term, in which it was held that the circumstances relied on were insufficient to show that the defendant had for the purpose of making intoxicating liquors, a certain mixture of fermenting substances and materials, or "mash," found in his possession.

We are therefore of opinion that the evidence does not support the verdict of conviction. The judgment of the circuit court will be reversed, the verdict set aside and a new trial awarded.

*Reversed and remanded.*