STATE OF WEST VIRGINIA

*v.*

R. W. GREER

(No. 9883)

Submitted April 15, 1947.  Decided May 6, 1947.

*Clay S. Crouse* and *John Q. Hutchinson,* for plaintiff in error.

*Ira J. Partlow,* Attorney General and *J. Chandler Curd,* Assistant Attorney General, for defendant in error.

KENNA, JUDGE:

Pursuant to a verdict R. W. Greer was sentenced by the Criminal Court of Raleigh County for the grand larceny of five Gillette automobile passenger tires and one Goodyear truck tire, the property of Earl Cobb, doing business as Raleigh Tire & Rubber Company, of the aggregate value of $75.00. The Circuit Court of Raleigh County declined his application for a writ of error and the case came here. The case was tried under the State's bill of particulars on the theory that the accused had received the property described in the indictment knowing it to have been stolen under the rule laid down in *State* v. *Wallace,* 118 W. Va. 127, 189 S. E. 104. See also *State* v. *Halida,* 28 W. Va. 499, and *State* v. *Goldstrohm,* 84 W. Va. 129, 99 S. E. 248. Since the assignments of error are entirely general we will restrict our discussion to the points briefed and argued, considering first the motion to strike the State's evidence and direct a verdict for the defendant.

There are a number of contradictions in the testimony of the State's witnesses which, in the light of the verdict of guilty, the jury has passed upon, so that this Court must consider that it gave credence to that which was most favorable to the State's case. The statements of facts herein contained, therefore, will be made with that principle in mind.

R. W. Greer lived with his wife and family in the outskirts of the City of Beckley. At about three o'clock in the morning of August 26, 1945, he met Carl Clark, Fred Gatewood and Gordon Doyle Hylton at the Beckley Cafe in that city. Greer had before that time been employed by Raleigh Tire & Rubber Company and was familiar with the physical plan of its place of business on North Kanawha Street and with the location of its stock therein.

He and the three named young men talked together in his car, which was parked in front of the restaurant, Greer explaining to them how they could enter the building by breaking a window from the North Kanawha Street side, unlatching it, finding tires on the tire rack, bringing them out through the window and loading them into a car that they were driving that evening. This they agreed to do, Greer driving to the neighborhood with them and they following his car after they had gotten the tires and delivering them to Greer. Clark went into the building in the manner planned and handed six tires to one of the young men who was outside the window, the other standing guard. They then followed Greer's car to the Wildwood Cemetery and there delivered the tires to him, he agreeing to sell them and to divide the proceeds of between thirty and forty dollars per tire equally among the four.

The occurrence on the morning of August 26 seems to have been the first contact of any of the three young men with Greer. However, the State was permitted to show that on several subsequent occasions they, together with other acquaintances of theirs, one by the name of Ritchie Thompson, had delivered to Greer for sale property that they told him had been stolen by them, some of it from one of the stores of the New River Company at Skelton, some from a jewelry store at Blackstone, Virginia, and a clock, radio, spotlight and mirror stripped from two stolen automobiles with tools borrowed from Greer at his home. A considerable part of this property was found in the possession and control of Greer when the search warrant hereinafter discussed was executed. In our opinion it was not error for the trial court to refuse to direct a verdict for the accused.

The accused's demand for a bill of particulars was made October 19, 1945, the indictment upon which he was tried having been returned October 3, and he was tried on October 22. Greer's supporting affidavit is based upon two larceny indictments pending against him in the Criminal

Court of Raleigh County, although his motion for a bill of particulars seems to have been confined to this case. The bill of particulars that was filed by the State related to the two felony charges of grand larceny, restricting both, however, to the receiving of stolen goods knowing them to have been stolen, thus eliminating a conviction of the actual larceny. His motion was renewed after the State had particularized to that extent. It would seem that Greer's desire for a bill of particulars mainly concerned property that the State was permitted to show went into his hands as the result of subsequent larcenies committed by the same young men and their associates. Of course these subsequent larcencies are not probative concerning the actual facts of the theft from Raleigh Tire & Rubber Company, but were relevant only to the extent that they might throw light upon the question of Greer's guilty knowledge, or whether he received twenty dollars in value of the goods then taken, knowing them to have been stolen. To the extent stated the showing of the subsequent receipt of stolen property from the same persons we believe was relevant, it not being remote in point of time, but did not go, except collaterally, to the nature of the charge against Greer. A bill of particulars is for the purpose of informing the accused concerning the accusation of which he stands charged; not the particularity of the evidence which the State expects to introduce. It is largely because of the difficulty of drawing a line through the border zone between proper and improper demands for bills of particulars that the matter is left largely to the discretion of the trial court. In this instance we see no abuse of that discretion.

The fact that the trial court excused a venireman on voir dire because he stated that he was a lodge brother and personal friend of the accused and for that reason would rather not serve, although he believed that he could conscientiously perform the duties of a juror, is assigned as error. This is another matter that is very largely discretionary and there is no prejudice shown in the matter.

The accused objected and excepted to the admission of statements by Hylton, Gatewood and Clark to others and to each other concerning the theft charged in the indictment. In this connection it is necessary to remember that under its bill of particulars the State was not trying Greer for an actual larceny, but was trying him for the receipt of the goods described in the indictment, knowing them to have been stolen. That fact would seem to eliminate statements claimed to be those of co-conspirators or of accomplices, since no one is shown to have participated in the actual receipt of the goods by Greer. Therefore, we do not believe that the cases to the effect that statements of an accomplice if made prior to the attempted execution of the conspiracy are admissible, are to be applied in this instance. To the contrary we believe that the statements made not in the presence of Greer concerning threats made by him, statements that had been made to him, or other like testimony without laying the proper foundation, are manifestly improper.

We are of the opinion that the issuance of the search warrant with the introduction of the goods procured as the result of its execution and the form of the complaint upon which it was based are violative of the provision of Section 6, Article III of our Constitution, which reads as follows:

> "The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized."

We believe also that the trial court's statement in chambers in response to the defendant's motion to exclude the warrant and evidence found under it, to the effect that the search warrant was not to be referred to by the prosecuting attorney in his opening statement nor admitted in evidence, followed by permitting the search warrant and the complaint to go in and apparently the

goods procured by its execution to be exhibited to the jury, if not admitted in testimony, without informing counsel that the attitude of the court had undergone a change, constituted reversible error.

The complaint upon which the search warrant was based states simply that the affiant has reasonable and just cause to "suspect" that goods stolen by one John Doe from the New River Company were concealed upon the premises of Bob Greer, describing his place of residence. Our constitutional provision is to the effect that no warrant shall issue except upon "probable cause." True, Code, 62-1-18, authorizing the issuance of search warrants, uses the phrase "reasonable cause" but that fact of course does not alter the constitutional requirements and consequently in determining the validity of the search warrant based upon suspicion the question is whether suspicion meets the requirement of probable cause. We believe that it is apparent that it does not and that it would be of no benefit to refer to authorities outside this jurisdiction to discuss what we think is a plain difference in meaning. Suspicion relates primarily to the point of view of the observer and varies according to his knowledge of the subject's past; probable cause is arrived at by applying the general experience of mankind to present matters of fact. Probable cause is not the deduction of a single individual, but is the result of common judgment. A wry mind may suspect where all others would completely absolve. We therefore believe that the complaint upon which the search warrant was issued and the warrant itself are bad.

We are of the opinion that the search warrant is bad also for the reason that it does not describe the property to be seized as is expressly required by the constitutional provision in question. Thus the complaint and the warrant speak of the property to be seized as "one lot of merchandise statement attached, of the goods and chattels of The New River Co., a Corp.,". This is no description. The property to be seized must be described within the warrant itself or within the sworn complaint expressly made

a part of the warrant by direct reference thereto. A search warrant should not be made a catchall dragnet. To attempt to do so jeopardizes those who take charge of its execution.

We do not believe that it is necessary to cite authorities to sustain what to our minds is a clearly expressed constitutional provision, but see the discussion in *State* v. *Joseph,* 100 W. Va. 213, 216, 130 S. E. 451, and in *State* v. *McKeen,* 100 W. Va. 476, 130 S. E. 806. See also Cornelius on Search and Seizure, 331, Paragraph 122; 47 Am. Jur. 524, Paragraph 37; and *People* v. *Prall,* 314 Ill. 518, 145 N. E. 610. It will be noted that the complaint upon which the warrant was issued and the warrant describe the things to be seized as the property of the New River Company while the indictment describes the property taken as belonging to the Raleigh Tire & Rubber Company. Therefore the proof introduced under the search warrant could not concern the principal issue being tried but could only affect the collateral issue of knowledge, intent and plan upon the part of Greer. It was true that the State was able to trace into the possession and control of Greer stolen property taken upon other occasions by the State's witnesses. This testimony was objected to on the part of the defendant. We believe its relevance is amply sustained by the case of *State* v. *Baker,* 84 W. Va. 151, 99 S. E. 252. See also the annotation in 105 A. L. R. 1288.

For the foregoing reasons the judgment of the Criminal Court of Raleigh County is reversed, the verdict set aside, and a new trial awarded.

*Reversed.*