304 S.E.2d 831

**STATE of West Virginia**

v.

**David MEADOWS.**

**No. 15601.**

Supreme Court of Appeals of West Virginia.

June 22, 1983.

---

Norris Kantor, J. Franklin Long, Bluefield, for appellant.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

This case is before this Court upon the appeal of David Meadows, the appellant, from a judgment of the Circuit Court of Mercer County, West Virginia, which found him guilty of first degree murder. The appellant was sentenced to life imprisonment, without recommendation of mercy. This Court has before it the petition for appeal, all matters of record and the briefs and oral argument of counsel.

In his appeal the appellant asserts five errors. Those assertions are: (1) the trial court erred in failing to issue a directed verdict in favor of the appellant because the evidence was insufficient to sustain a guilty verdict; (2) the trial court erred in failing to issue a directed verdict in favor of the appellant due to the State's variance in its evidence from the bill of particulars filed in the present case; (3) the trial court erred in refusing to give appellant's In-

struction No. 21 to the jury, regarding the necessity of the State to prove the appellant's presence at the scene of the crime beyond a reasonable doubt; (4) the trial court erred in permitting the prosecution to misquote the evidence during final arguments, and (5) the trial court erred in failing to strike a juror for cause when it became known during *voir dire* that the juror had been employed as a prison guard ten years prior to his jury duty.

Testimony was heard at trial that the appellant and the murder victim, Gloria Darlene Hairston, were romantically involved. However, on the afternoon of November 28, 1979, the appellant appeared at Ms. Hairston's place of employment and accused her of having an affair with a co-employee, Jerry McConnell. After the appellant struck both Ms. Hairston and Mr. McConnell with his fist, the appellant drew a knife on Mr. McConnell. While the altercation stopped at that point, the appellant, before leaving, was overheard as saying, "I'm not through with you all yet." Ms. Hairston, along with other co-workers, accompanied Mr. McConnell to a hospital for treatment of an eye injury which required several stitches. After the visit to the hospital, one of Ms. Hairston's co-workers took her to her car at "about twenty minutes till 7, a quarter till, somewhere around there."

The record indicates that on November 28, 1979, at 6:00 p.m., the appellant borrowed a 1975 royal blue Chevrolet Caprice Classic automobile, with a C.B. antenna mounted on its trunk, from a Veronica Finney. Ms. Finney testified that upon returning her automobile later that evening at either 7:20 p.m. or 8:20 p.m., the appellant watched television at her home in Bluefield, West Virginia, until 10:30 p.m. Ms. Finney also testified that the appellant borrowed her automobile again one day during the week following November 28, 1979.

Another witness, who knew Ms. Hairston, testified that she saw Ms. Hairston and an unidentified person sitting in Ms. Hairston's automobile, a Chevrolet Monza, which was parked alongside Route 52 in Freeman, West Virginia, at 7:30 p.m. on November 28, 1979. The witness also testified that she saw a larger automobile, in which yet another person appeared to be sitting, parked in front of Ms. Hairston's automobile.

The record also indicates that on the evening of November 28, 1979, the same two automobiles were parked close to a trailer occupied by Shirley and Jack Dillon. That evening Ms. Dillon was talking on the telephone when she heard her dogs barking. Upon looking outside she saw two automobiles, a small one and a larger, dark one with a C.B. antenna mounted on its trunk, parked off the side of Route 52. After seeing a person walking from the smaller automobile to the larger one she returned to her telephone conversation. However, a short time later the dogs again started barking. This time Ms. Dillon opened her front door and after noticing that the two automobiles had moved some 200 to 300 feet down the road she thought she heard a woman scream. Ms. Dillon also saw a man, whom she could not identify, standing beside the larger automobile.

Soon after returning to her telephone conversation, Ms. Dillon heard two gun shots. While she could not be exact about when the shots occurred, she indicated, however, that she heard the shots between 7:00 p.m. and 8:00 p.m. that same evening.

Other witnesses, who knew Ms. Hairston and could recognize her automobile, testified that they had seen her automobile parked on the same section of Route 52 near the Dillon residence later that evening. One such witness testified that Ms. Hairston's automobile was still parked there when she drove by it about midnight. The larger automobile, however, was not there at that time.

Shirley Dillon's husband, Jack, arrived home around midnight that night and he too saw the smaller automobile which was parked 200 to 300 feet down the road from his home. Soon thereafter the dogs once again began to bark. At that time Mr. Dillon looked out the window and heard the automobile's engine start. The automobile then backed up and stopped in front of the Dillon home, which sat on a small knoll

overlooking the road. Mr. Dillon testified that as he watched, an unidentified person put "something" on the floor of the back-seat of the automobile. He also heard "a thud noise, like it was something heavy" when the object was placed in the automobile. The unidentified person got back into the automobile, made a U-turn and drove in the direction of Bluefield. While the automobile made its U-turn on Route 52, Mr. Dillon also saw a second unidentified person walking on the opposite side of the road. At no time did Mr. Dillon see the larger automobile.

On December 4, 1979, during the week following Ms. Hairston's death, Ms. Dillon saw an automobile parked in front of her home. She identified it as the same large automobile with a C.B. antenna mounted on its trunk which had been parked near her home on the evening of November 28, 1979. The record indicates that Mr. Dillon looked at the license number of the automobile and as he read it aloud Ms. Dillon wrote the number on a "piece of a small envelope." The license number was that which belonged to the 1975 royal blue Chevrolet Caprice Classic automobile owned by Ms. Finney.

Wanda Talton, appellant's neighbor, who was also familiar with Ms. Hairston's automobile, testified that at about 1:00 a.m. or 1:30 a.m. on November 29, 1979, she saw what appeared to be Ms. Hairston's automobile parked next to a church annex in Bluefield. The church annex was located between Ms. Talton's home and the home of the appellant. She also saw the automobile later that morning parked in a different position, but still next to the church annex. She did not see the automobile anytime thereafter.

On November 29, 1979, Ms. Hairston was reported as missing. Her body, her purse and coat, with one button missing, were later found in a shallow grave next to a warehouse in Bluefield on January 17, 1980. The cause of her death was due to multiple shotgun wounds.

Also on November 29, 1979, the appellant called Ms. Hairston's place of employment to see if she was there. A co-worker told him that she was not. During that conversation the appellant told the co-worker that he had seen Ms. Hairston's automobile at the bus station in Bluefield. When asked by the co-worker how he knew it was her automobile, the appellant replied that he had a set of keys and had opened the automobile's door.

On November 30, 1979, the appellant and Jerome Hairston, Ms. Hairston's cousin, searched in vain for her automobile. At no time during this search did the appellant inform the cousin that he already knew where the automobile was located.

On December 1, 1979, the appellant called Ms. Hairston's parents and told them he had found her automobile at the Bluefield bus station. Later that evening her parents, accompanied by the appellant, went to the bus station and, using a set of keys in his possession, the appellant opened the automobile for their inspection.

The following day, December 2, 1979, along with another cousin, Tyrone Hairston, and Ms. Hairston's parents, the appellant again went to the bus station to see the automobile. Again the appellant used his set of keys to gain entrance into the automobile. Later that day the appellant gave the set of keys in his possession to Tyrone Hairston, who in turn gave them to the police.

The record indicates that when Ms. Hairston purchased her automobile she was given two sets of original keys to it. The record further indicates that when Ms. Hairston's body and purse were found her set of keys was not in her purse. The set of keys the appellant gave to Tyrone Hairston was later determined to be one set of the original keys. Ms. Hairston's father was in possession of the other set.

After Ms. Hairston's automobile was turned over to the police for investigation, newspapers, some .12 gauge shotgun pellets, a towel, and a piece of rubber window seal, with blood smeared on them, were found in the car. The blood found on those items was of the same grouping as Ms. Hairston's blood. Her blood grouping occurs in approximately 1.3% of the population.

The police also investigated the areas in front of the Dillon home where the Dillons had heard and viewed the happenings of the night of November 28, 1979. As a result of this investigation, the police found a pair of glasses with the initials "GDH" which were identified as belonging to Ms. Hairston, a button which matched the remaining buttons on her coat, and some blood specimens. These blood specimens were also of Ms. Hairston's blood grouping.

Also as a part of their investigation the police timed how long it would take, driving at a moderate speed, to travel from the Dillon residence in Freeman to Ms. Finney's residence in Bluefield. It took 18 minutes.

## I

■ Appellant's first assignment of error is that the evidence was insufficient to sustain a guilty verdict. In syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), this Court held:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

■ Additionally, because the evidence presented at trial was circumstantial in nature, another standard must also be applied. In syllabus point 2 of *State v. Dobbs*, 163 W.Va. 630, 259 S.E.2d 829 (1979), this Court held:

Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction.

■ Moreover, this Court in syllabus point 1 of *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967), has also held: "If, on a trial for murder, the evidence is wholly circumstantial, but as to time, place, motive, means and conduct, it concurs in pointing to the accused as the perpetrator of the crime, he may properly be convicted."

■ This Court further held in syllabus point 4 of *State v. Bailey, supra:* "The weight of circumstantial evidence, as in the case of direct evidence, is a question for jury determination, and whether such evidence excludes, to a moral certainty, every reasonable hypothesis, other than that of guilt, is a question for the jury."

We also noted in *State v. Noe*, 160 W.Va. 10, 230 S.E.2d 826 (1976), that "*State v. Bailey, supra,* cannot stand for the proposition that, in all instances, circumstantial evidence standing alone is sufficient to take the case to the jury." 160 W.Va. at 15, 230 S.E.2d at 829. In *State v. Noe, supra,* the circumstantial evidence consisted of nothing more than fingerprints of the defendant's right thumb and right middle finger found on a pane of glass in the doorway of the apartment occupied by the murder victim. In reversing, we held that the fingerprints, standing alone, did not show the presence of the defendant (who had often visited the deceased) during the time which the deceased was killed, and thus was insufficient in warranting a murder conviction.

■ The circumstances of the present case are substantially different than those in *State v. Noe, supra.* It is apparent from the record that sufficient evidence existed for the jury to conclude that Ms. Hairston was killed in close proximity to the Dillon residence sometime between 7:00 p.m. and 8:00 p.m. on November 28, 1979. During this time period Ms. Finney's automobile was identified as being parked next to Ms. Hairston's automobile, both of which were parked close to the Dillon residence. This was also the period of time during which it was uncontradicted that the appellant had sole use and possession of the Finney automobile.

It is also apparent from the record that sufficient evidence existed for the jury to find that Ms. Hairston's murderer came back to the scene of the crime some hours later, and using Ms. Hairston's automobile, transported her body to where it was later found, buried in a shallow grave in Bluefield. Ms. Hairston's automobile was viewed the following morning as being parked near the appellant's residence. The appellant then "found" Ms. Hairston's automobile later that day, November 29, 1979, and informed one of Ms. Hairston's co-workers. However, on November 30, 1979, the appellant gave no indication that he knew where the Hairston automobile was located when he and Jerome Hairston searched in vain for it. The appellant "found" the Hairston automobile again on December 1, 1979. On both December 1 and December 2, 1979, the appellant used Ms. Hairston's set of keys to gain entrance into her automobile.

While the evidence presented at trial was entirely circumstantial, sufficient evidence existed to convince impartial minds of the guilt of the appellant beyond a reasonable doubt. Sufficient evidence existed which effectively placed the appellant at the scene of Ms. Hairston's murder when that murder occurred. The evidence also substantiates a motive for the killing, i.e., jealousy.

At trial the appellant's defense was that he was at the Finney home watching television when the murder occurred. However, Ms. Finney testified only that the appellant returned to her home at either 7:20 p.m. or 8:20 p.m. on November 28, 1979. This was but one piece of evidence which the jury considered in reaching a verdict. It is apparent from the verdict that the jury did not believe that the appellant was present at the Finney home when Ms. Hairston was killed. We cannot say that the evidence presented at trial upon which the jury convicted the appellant was "manifestly inadequate." The circumstances did not create the mere suspicion of

guilt. Instead, the jury determined, as per *State v. Bailey, supra,* that the evidence was sufficient to prove the actual commission of Ms. Hairston's murder by the appellant to the exclusion of every reasonable hypothesis of innocence. We do not disagree.

We, therefore, find appellant's first contention to be without merit.

## II

The appellant's second assertion is that a verdict should have been directed in his favor because there was a variance in the State's evidence and the bill of particulars.[1] A portion of the trial court's order relating to the defendant's motion for a bill of particulars is as follows:

2. The State must provide the defendant with the time, place, and hour of day or night that the defendant allegedly committed the act(s) which the State claims constituted the crime for which the defendant stands indicted, and these facts shall constitute part of the State's proof....

6. If the State knows, the State shall provide the defendant with the time and hour of the death of the deceased.

7. If the State knows, the State shall provide the defendant with the time which the State alleges the defendant inflicted the alleged mortal wounds to the deceased.

The State's response was: "(2) Wednesday, November 28, 1979 between approximately 18:45 hours [6:45 p.m.] and 19:45 [7:45 p.m.] near Freeman, West Virginia. (6) Within minutes of the time of the mortal wound, which occurred between the hours of 18:45 and 19:45. (7) Same as no. 6."

■ At trial Dr. Vasudeo Kshirsagar, state medical examiner, testified that during his examination of Ms. Hairston's body, particles of digested meat were found in her stomach. Dr. Kshirsager also testified that the meat had been consumed by Ms.

1. In 1965 a bill of particulars was codified in *W.Va.Code,* 62–1B–1 [1965], under the discovery article of the criminal procedure statutes. Effective October 1, 1981, this Court promulgated the West Virginia Rules of Criminal Procedure. Reference to a bill of particulars may be found in W.Va.R.Cr.P. 7(f) and 12(b)(4).

Hairston two to four hours before her death. He also testified that, in circumstances where a person is upset, it takes five to six hours to digest food.

The appellant contends that because none of Ms. Hairston's co-workers saw her eat anything that afternoon before leaving the last of their company at approximately 6:45 p.m., she must have eaten later that evening.

If the earliest Ms. Hairston could have eaten anything was 6:45 p.m. and if the digested meat had been in her stomach for at least two hours, it would have meant that she would had to have been killed no sooner than 8:45 p.m. Thus, the 8:45 p.m. time was at variance with the "approximate" 6:45 p.m. to 7:45 p.m. time frame and the evidence failed to comply with the information contained in the bill of particulars. The appellant contends that this variance constitutes sufficient grounds for reversal.

However, at trial the State produced evidence showing that beef sticks and hot sausages, among other items, were kept at Ms. Hairston's place of employment as snacks for the employees. Several co-workers also testified that Ms. Hairston often ate those meat items which were available to her. The State contends that simply because no one saw her eat such a snack on that afternoon does not mean that she did not do so. The State further contends that the fact that those items were available to Ms. Hairston and that on many occasions she did eat such items was sufficient evidence for the jury to infer that she ate a beef stick or sausage the afternoon before her death. Finally, the State contends that the appellant's interpretation of the evidence is but one theory of the case which the jury had before it when reaching a verdict. It was the jury's province to either accept that theory or reject it. It is obvious from the verdict that the jury rejected the appellant's theory.

"It is fundamental that the accused must be fully and plainly informed of the character and cause of the accusation. The Constitution so requires.... A bill of particulars is for the purpose of furnishing details omitted from the accusation or indictment, to which the defendant is entitled before trial." *State v. Counts,* 90 W.Va. 338, 342, 110 S.E. 812, 814 (1922). *See State v. Koski,* 101 W.Va. 477, 133 S.E. 79 (1926). *See also* 3A M.J. *Bill of Particulars* § 3 (1976).

In *State ex rel. Whitman v. Fox,* 160 W.Va. 633, 236 S.E.2d 565 (1977), this Court recognized that any lack of specificity with regard to details in an indictment are discoverable upon a proper motion for a bill of particulars. We have recognized a bill of particulars as a discovery device. We believe, therefore, that in determining whether a bill of particulars is sufficient, we may be guided by recent pronouncements by this Court in regard to the discovery motions which have dealt with nondisclosure of court ordered discovery. We analogize that where the State offers an erroneous answer in a bill of particulars, it is similar to the situation of a non-disclosure.

In syllabus point 2 of *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980), we said:

When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, nondisclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.

To this we added in *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402, 412 (1982), that "[t]he relevant inquiry under this standard is prejudice to the defendant resulting from either surprise on a material issue or where the nondisclosure hampers the preparation and presentation of the defendant's case." *See also State v. Trail,* 163 W.Va. 352, 255 S.E.2d 900, 904 (1979); *State v. Cowan,* 156 W.Va. 827, 197 S.E.2d 641 (1973).

Therefore, the relevant inquiry in the present case focuses upon prejudice to the appellant resulting from either surprise concerning the time period in question, i.e., 6:45 p.m. to 7:45 p.m., or whether the failure of the State to disclose a later time

frame hampered the preparation and presentation of the appellant's case.

In the present case the trial judge stated that no prejudice resulted to the appellant by the approximation of 6:45 p.m. to 7:45 p.m. He stated that there was some evidence that the death could have occurred around "7:30 to quarter to 8." Moreover, he added "unless you have got somebody with a clock watching someone get killed you are not going to know exactly what time it is."

■ As was stated in *State v. Greer*, 130 W.Va. 159, 162, 42 S.E.2d 719, 721 (1947), "[i]t is largely because of the difficulty of drawing a line through the border zone between proper and improper demands for bills of particulars that the matter is left largely to the discretion of the trial court." This Court has consistently held that subject to certain exceptions, not relevant in this case,[2] pre-trial discovery in a criminal case is within the sound discretion of the trial court. *State v. Dudick*, 158 W.Va. 629, 213 S.E.2d 458 (1975); *State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980).

■ Upon a careful analysis of the facts in this case we are of the opinion that the trial court did not abuse its discretion in holding that the bill of particulars was not at variance with the evidence. The trial court did not err in allowing all of the evidence relating to the time of Ms. Hairston's death to be heard by the jury. We conclude that the appellant was not hampered in the preparation and presentation of his case, nor was he surprised. The appellant merely interpreted the evidence one way and presented that theory to the jury for consideration. It is obvious from the verdict that the jury rejected the appellant's theory and accepted the State's theory of the case.

The ruling of a trial court concerning the sufficiency of a bill of particulars will not be reversed on appeal unless the trial court abused its discretion. *See* syllabus point 2, *State v. Hudson*, 128 W.Va. 655, 661, 37 S.E.2d 553, 556 (1946). In the case now before us, we hold that the trial court did not abuse its discretion and thus find appellant's second assignment of error to be without merit.

### III

Appellant's third assertion is that the trial court erred in refusing to give appellant's Instruction No. 21 to the jury. That instruction read: "The Court instructs the jury that if the state has failed to prove beyond all reasonable doubt that David Meadows was at the scene of the crime at the time of the slaying of Gloria Darlene Hairston then the jury shall find David Meadows not guilty."

When appellant's Instruction No. 21 was submitted to the trial court the State objected on the ground that the instruction was repetitious. The trial court upheld the objection and refused to give the instruction. Appellant's Instruction No. 16 was given. A portion of that instruction informed the jury of the necessity of the State proving:

[T]he actual presence of the defendant at the place where, and at the time when, the crime was committed, and if from the evidence the jury has a reasonable doubt as to the presence of the defendant at the place where, and at the time when, the offense was committed, they should acquit him.

■ This Court held in syllabus point 7 of *State v. Cokeley*, 159 W.Va. 664, 226 S.E.2d 40 (1976): "Instructions that are repetitious or are not supported by the evidence should not be given to the jury by the trial court."

■ Because we find appellant's Instruction No. 21 to be repetitious of his

---

2. In *State v. Dudick*, 158 W.Va. 629, 213 S.E.2d 458 (1975), we recognized that the exceptions, constitutional in nature, concerned "any matter known to the prosecution which is obviously exculpatory in nature or which may be relevant and favorable to the defendant." 158 W.Va.at 635–636, 213 S.E.2d at 463. *See also Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Moreover, in *State v. Hatfield, supra*, we discussed the distinction recognized in earlier cases that for discovery of non-exculpatory material a motion for discovery or bill of particulars must ordinarily be used. The prosecution has a constitutional duty to disclose exculpatory material. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Instruction No. 16, we hold that the trial court properly refused to give the instruction.

## IV

Appellant's fourth assertion is prosecutorial misconduct. In his closing argument, the prosecutor quoted witnesses as having testified that the larger car at the scene of the murder was blue. In fact, the witnesses only testified that the car was dark.

■ In syllabus point 5 of *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982), this Court held: "A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice."

■ In the case now before us, while the prosecuting attorney did misstate some facts in his closing argument, appellant's objections were sustained and the trial court cautioned the jury members to use their own memories on the subject, and not the memory of the prosecuting attorney. Given the cautionary remarks of the trial court, the statements made by the prosecuting attorney did not clearly prejudice the appellant, nor did the statements result in manifest injustice.

## V

■ Appellant's fifth assertion is that the trial court erred in failing to strike a juror for cause when it became known during *voir dire* that the juror had been employed as a prison guard in Virginia ten years prior to his jury duty.

Appellant relies upon syllabus point 5 of *State v. West,* 157 W.Va. 209, 200 S.E.2d 859 (1973), in which this Court held: "In a criminal case it is reversible error for a trial court to overrule a challenge for cause of a juror who is an employee of a prosecutorial or enforcement agency of the State of West Virginia."

In *State v. West, supra,* the trial court required the defendant to use one of his peremptory challenges to eliminate as a juror an individual who was at that time an employee of the West Virginia Department of Public Safety. In that case we relied upon syllabus point 1 of *State v. Hatfield,* 48 W.Va. 561, 37 S.E. 626 (1900), which provides, in part: "The object of the law is, in all cases in which juries are impaneled to try the issue, to secure men for that responsible duty whose minds are wholly free from bias or prejudice either for or against the accused...."

Moreover, we also stated in *State v. West, supra,* that:

[A]s far as practicable the process of selecting jurors should endeavor to secure jurors who are not only free from prejudice, but who are also free from the suspicion of prejudice.... [W]hen the defendant can demonstrate even a tenuous relationship between a prospective juror and any prosecutorial or enforcement arm of State government, defendant's challenge for cause should be sustained by the court.

157 W.Va. at 219, 200 S.E.2d at 865–66.

The trial court ascertained, after questioning by defense counsel, that the juror was not prejudiced against the defendant by reason of having been at one time a prison guard. We agree and conclude that the fact that the juror had been employed as a guard in an out of state prison ten years prior to his jury duty did not constitute such a tenuous relationship that requires reversal for failure to discharge him for cause. Thus, in responding to appellant's fifth assertion, we hold that where a prospective juror, upon individual questioning, indicated that he was a former penitentiary guard but had retired ten years before trial, it was not reversible error to permit him to be a juror where no prejudice was shown.

We find no reversible error in this case, and for the foregoing reasons, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.

HARSHBARGER, Justice, dissenting:

The State's case was entirely circumstantial. No one testified that defendant was at the scene of the crime, no murder weap-

on was produced; there was evidence that two people were involved in the transaction, but the prosecution did not present any other person. The only evidence implicating Meadows was his earlier argument with the victim, and Ms. Dillon's observation of a large, dark car with a C.B. antenna on the trunk, a car later identified by its license number to belong to Ms. Finney, loaned to Meadows that night; and his possession of keys to Hairston's car and the absence of such keys in her car or among her effects.

Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction. Syllabus Point 2, *State v. Dobbs*, 163 W.Va. 630, 259 S.E.2d 829 (1979).

*See also State v. Noe*, 160 W.Va. 10, 230 S.E.2d 826 (1976); *State v. Allen*, 139 W.Va. 818, 82 S.E.2d 423 (1954); *State v. Clay*, 135 W.Va. 618, 64 S.E.2d 117 (1951); *State v. Cutlip*, 131 W.Va. 141, 46 S.E.2d 454 (1948); *State v. Hudson*, 128 W.Va. 655, 37 S.E.2d 553 (1946); *State v. Kapp*, 109 W.Va. 487, 155 S.E. 537 (1930); *State v. Bennett*, 93 W.Va. 548, 117 S.E. 371 (1923).

In *State v. Clay, supra,* Clay had highly over-insured his property, which soon thereafter burned. We stated in *Clay*, 135 W.Va. at 626–627, 64 S.E.2d, at 122:

Here we have nothing but proof of his fraudulent manipulations in obtaining the insurance policies, and the fact that shortly thereafter the property insured was destroyed by fire. *No witness places him at or near the scene of the crime within twenty-four hours of its commission, and the testimony of the witnesses who placed him elsewhere is not attempted to be disproved. Only suspicion remains, and this Court cannot act solely on suspicion. Suspicion must be upheld by testimony on clear circumstances which leave no hypothesis but that of guilt.* The justified suspicion which the jury must have had, and which, by its verdict, it converted into a

belief that the defendant was guilty of the crime alleged against him beyond all reasonable doubt, cannot be accepted by this Court as sufficient to uphold the verdict returned by it. We cannot say that the evidence in this case excludes every reasonable hypothesis that the burning was not committed by some one other than defendant, or by accidental means; and the proof, such as there is, being wholly circumstantial, does not rise to the exclusive nature required for a conviction. (My emphasis).

In *State v. Dobbs, supra,* 163 W.Va. at 635, 259 S.E.2d, at 832, we emphasized that "the State must prove that the defendant was present at the place and time a crime was committed, if personal presence is essential to proof of the act."

We reversed the conviction of Seymour Smith for the murder of his fiancee's father in *State v. McKenzie*, 108 W.Va. 208, 150 S.E. 602, 605 (1929), stating:

Even though it should be determined that the evidence sufficiently points to Smith as a perpetrator of this heinous crime, yet, there is nothing to connect the defendant with its commission, except certain facts and circumstances which, as noted above, while casting a strong suspicion upon the defendant, do not, to a moral certainty, exclude every hypothesis inconsistent with her innocence. *State v. Gilfillen*, 96 W.Va. 660, 123 S.E. 578; *State v. Dudley*, 96 W.Va. 481, 123 S.E. 241.

.    .    .    .    .

It is one of the fundamental rules that circumstantial evidence should always be scanned with great caution; and to convict on circumstantial evidence alone it should to a moral certainty exclude every other hypothesis except that of guilt. Every single circumstance essential to the conclusion of guilt must be proven in the same manner and to the same extent as if the whole issue had rested upon the proof of each individual and particular circumstance." *State v. Dudley, supra.*

In *State v. Bailey, supra,* for example, circumstantial evidence was held sufficient

to sustain a conviction, the evidence being that Bailey was present at the time of the murder, and that she had a gun.

Hairston was shot with a twelve-gauge shotgun, but it was never found, and no evidence was introduced that Meadows has or ever had one. Ms. Dillon testified that the person she saw at the scene was taller than defendant's attorney who in turn is several inches taller than defendant; and Mr. Dillon said that the man he saw was a "fairly big guy". Ms. Dillon could only say that she saw a dark car, and she could not name its color. Meadows' alibi was provided by Ms. Finney, a prosecution witness.

Even though Meadows and Hairston had had an argument, and he told conflicting stories about locating her car after she disappeared, and had keys to her car and none were found in it or in her effects or at the crime scene, that was insufficient evidence on which to convict him, in my opinion.

The court instructed the jury about facts the State must prove, including its duty to put Meadows at the crime scene; and instructed that if there was failure of proof of any of the elements, then the jury must find him not guilty. The court did instruct that any material fact necessary to establish the defendant's guilt must be proved beyond a reasonable doubt, and gave an alibi instruction offered by Meadows.* However, the instructions were infirm because that particular alibi instruction has been found to impermissibly shift the burden of proof to a defendant. *State ex rel. Adkins v. Bordenkircher*, 517 F.Supp. 390 (S.D.W.Va.), *affirmed*, 674 F.2d 279, 282 (4th Cir.1982), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). Also,

*Adkins* held that West Virginia's former burden-shifting approach to alibi defenses could not be harmless error. *Id.*, 517 F.Supp. at 399–400.

We should reverse Meadows' conviction because there was insufficient evidence to convict. We should also advise our trial judges that giving the alibi instruction in *Alexander* is reversible error. Also, when an alibi defense is presented, it would be wise to specifically instruct about the State's burden of proving defendant's presence at the scene.

---

* Defendant's Instruction No. 16:

"The Court instructs the jury that while the burden of proving an alibi is on the defendant, on account of its affirmative nature, this does not dispense with the necessity of the state proving the actual presence of the defendant at the place where, and at the time when, the crime was committed, and if from the evidence the jury has a reasonable doubt as to the presence of the defendant at the place where, and at the time when, the offense was committed, they should acquit him."

This instruction meets the criteria in Syllabus Point 2, *State v. Alexander*, 161 W.Va. 776, 245 S.E.2d 633 (1978):

"An instruction is proper that says that where the state has established a *prima facie* case and a defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused."