342 S.E.2d 210

**STATE of West Virginia**

v.

**Russell Clark PHILLIPS.**

No. 16495.

Supreme Court of Appeals of
West Virginia.

March 26, 1986.

Stephen G. Jory, R. Mike Mullens, Elkins, for appellant.

Mary Rich Maloy, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

In this case, the petitioner, Russell Clark Phillips, appeals from his 1983 conviction in the Circuit Court of Mineral County, West Virginia, of murder of the first degree, "without a recommendation of mercy." *W.Va.Code,* 61–2–1 [1931]; *W.Va.Code,* 62–3–15 [1965]. He received a penitentiary sentence of life imprisonment. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

## I

The appellant's conviction resulted from the charge that in the early morning hours of August 23, 1982, he shot and killed Timothy Roberts. The State's evidence was circumstantial.

In August, 1982, the appellant, age 23, was living with friends in an apartment in Parsons (Tucker County), West Virginia. On the evening of August 22, 1982, Timothy Roberts, age 17, went to the apartment and asked the appellant if he wanted to go to Elkins (Randolph County), West Virginia, and drive around. The appellant consented. The appellant and Timothy left Parsons in a red pickup truck which belonged to Timothy's father.

On the way to Elkins, the appellant and Timothy stopped at the residence of a girl friend of Timothy's brother, Terry. Terry was present, and the appellant and Timothy asked him if he wanted to accompany them to Elkins. Terry declined.

At approximately midnight that evening, the appellant and Timothy arrived at a tavern known as the Riverside Inn in Elkins. There, the appellant and Timothy drank some beer and also purchased some beer which they took with them.

On August 23, 1982, Timothy was declared missing by police authorities.

Approximately three weeks later, on September 11, 1982, the police were notified by a passer-by that a red pickup truck had been abandoned upon a wooded, swampy road in the Clover Run area near Parsons. The truck was identified as belonging to Timothy's father. The following day, about 100 feet from the truck, the police found Timothy's body. A shotgun belonging to Timothy's family and causing his death was found near the body.

A post-mortem examination revealed that Timothy's death resulted from a "[s]hotgun wound to the neck." Suicide was ruled out because the State's investigation revealed that a spent cartridge had been manually ejected from the gun after Timothy had received a wound which was paralyzing and fatal. The condition of the body upon being found was "consistent with death having occurred on or about the date [Timothy] was reported last seen...."

The appellant was indicted in Tucker County for murder of the first degree. The case was transferred to Mineral County for trial. The jury returned a verdict of guilty of murder of the first degree, "without a recommendation of mercy."

## II

In syllabus point 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978), this Court set forth the general standard for resolving the contention of convicted defendants in criminal cases that the evidence against them was insufficient:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

As indicated above, the State's evidence in this case was circumstantial.

We have recognized that circumstances which create only a "suspicion" of guilt are not sufficient to sustain a conviction in a criminal case. Syl. pt. 2, *State v. Meadows,* 172 W.Va. 247, 304 S.E.2d 831 (1983); *State v. Noe,* 160 W.Va. 10, 15, 230 S.E.2d 826, 830 (1976); *State v. Clay,* 135 W.Va. 618, 625, 64 S.E.2d 117, 121 (1951); *State v. Hudson,* 128 W.Va. 655, 670, 37 S.E.2d 553, 560 (1946); *State v. Mounts,* 120 W.Va. 661, 664, 200 S.E. 53, 55 (1938); syl., *State v. McKenzie,* 108 W.Va. 208, 150 S.E. 602 (1929); *State v. Whitehead,* 104 W.Va. 545, 546–47, 140 S.E. 531, 531 (1927); syl. pt. 1, *State v. Hunter,* 103 W.Va. 377, 137 S.E. 534 (1927); syl. pt. 3, *State v. Chafin,* 78 W.Va. 140, 88 S.E. 657 (1916). Moreover, circumstantial evidence should always be scanned with caution. Syl. pt. 2, *State v. Bennett,* 93 W.Va. 548, 117 S.E. 371 (1923).

■ In particular, in syllabus point 2 of *State v. Dobbs,* 163 W.Va. 630, 259 S.E.2d 829 (1979), this Court held:

> Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction.

However, this Court recognized in syllabus point 4 of *State v. Bailey,* 151 W.Va. 796, 155 S.E.2d 850 (1967), that: "[t]he weight of circumstantial evidence, as in the case of direct evidence, is a question for jury determination, and whether such evidence excludes, to a moral certainty, every reasonable hypothesis, other than that of guilt, is a question for the jury."

■ The record in the case before this Court demonstrates that on or about August 23, 1982, Timothy Roberts was killed in the Clover Run area near Parsons. The State found neither the fingerprints nor the footprints of the appellant at the scene.*

The appellant testified at trial that after he and Timothy left the Riverside Inn in

Elkins on the night of August 22, 1982, they stopped at the "Loop Club" near Elkins and met an acquaintance of Timothy by the nickname of "Starch, Starkey or Stretch." According to the appellant, the appellant, Timothy and the man known as "Starch, Starkey or Stretch" then drove (in the red pickup truck) to Parsons. In Parsons, the appellant got out of the truck, and Timothy and the man drove away. The appellant stated that that was the last time he saw Timothy.

The appellant contends that he slept that night in Parsons in a friend's automobile. Upon awakening, at approximately 7:00 a.m. on August 23, 1982, the appellant went to his brother's apartment, located in the same building as the apartment where the appellant had been living. The appellant stated that he talked to his brother that morning.

Finally, the appellant testified that at approximately 8:00 a.m. on August 23, 1982, he walked to his aunt's house in Parsons and worked upon her automobile until approximately 2:30 p.m.

The State, on the other hand, submitted to the jury the testimony of Terry Roberts, Timothy's brother. Terry Roberts testified that after the trip to Elkins with the appellant, Timothy was to pick Terry up at the residence of Terry's girl friend, to drive Terry home. Timothy, however, never appeared.

The State also called Donald Murphy who testified that his nickname was "Stretch" and that, during the period in question, he lived above the Loop Club near Elkins. He denied seeing the appellant or Timothy during the period in question and, in particular, denied going from the Elkins area to Parsons. Supported by the testimony of Jeffrey Beall, Murphy stated that at about 6:00 a.m. on August 23, 1982 (Monday), he and Beall drove to work in Pocahontas County, West Virginia.

As indicated above, the appellant asserted that upon his return from Elkins to Parsons he slept in a friend's automobile.

---

* It should be noted that during their investigation of the Clover Run area on September 12, 1982, the police recovered a latent fingerprint from the abandoned pickup truck. That fingerprint did not match the fingerprints of the appellant and was never identified.

Margaret S., age 17, testified that she was asked by the appellant to state that she was upon the balcony of an apartment in Parsons upon the night in question and saw the appellant "when he came home." However, Margaret S. indicated that she did not see the appellant return to Parsons that night. Moreover, Anthony Brooks, age 20, testified that the appellant asked Brooks to say that the appellant slept in an automobile near the apartment of the appellant's friends. Brooks, however, indicated that he did not know where the appellant slept upon the night in question.

Brooks further testified that on August 24, 1982, he saw a pair of pants, with what appeared to be blood upon them, in the garbage of an apartment. According to Brooks, the appellant stated that the pants belonged to the appellant and that the appellant had cut his leg.

The State also called Cynthia C., age 16, who had been the girl friend of Clifford Phillips, the appellant's brother. Cynthia C. testified that she and Clifford spent the night of August 22, 1982, at her aunt's house and did not go to Clifford's apartment the next day until approximately 10:30 a.m. Her testimony contradicted the appellant's testimony that he talked to his brother at his brother's apartment between 7:00 a.m. and 8:00 a.m. that morning.

Finally, Edith Roberts (Timothy's mother) and Jack Close, Jr. (age 19) testified that, shortly prior to the time Timothy was declared missing, the appellant indicated that he did not want Timothy to testify against the appellant concerning a previous criminal charge. Michelle R., age 16, also testified that the appellant stated that he did not want Timothy to testify against him. Michelle R. further testified that the appellant said he would "kill that little S.O.B. if he [Timothy] got in his way."

In *State v. Meadows, supra,* the defendant was convicted of murder of the first degree (without a recommendation of mercy), where the State had relied upon circumstantial evidence. In affirming the conviction, we noted that certain actions of the defendant, during the period concerning the crime, were contradictory or equivocal. The *Meadows* opinion states:

> The appellant [defendant] then 'found' [the victim's] automobile later that day, November 29, 1979, and informed one of [the victim's] co-workers. However, on November 30, 1979, the appellant gave no indication that he knew where the [victim's] automobile was located when he and Jerome Hairston searched in vain for it.
>
> . . . .
>
> At trial the appellant's defense was that he was at the Finney home watching television when the murder occurred. However, Ms. Finney testified only that the appellant returned to her home at either 7:20 p.m. or 8:20 p.m. on November 28, 1979. This was but one piece of evidence which the jury considered in reaching a verdict. It is apparent from the verdict that the jury did not believe that the appellant was present at the Finney home when [the victim] was killed.

172 W.Va. 253, 304 S.E.2d at 837.

As indicated by the evidence of the State in this case, the appellant's actions, during the period concerning the death of Timothy Roberts, were contradictory or equivocal. In any event, we are of the opinion that the evidence, though circumstantial, was such that it supports the verdict of guilt.

Affirming the defendant's conviction of murder of the first degree, "without a recommendation of mercy," this Court, in *State v. Beale,* 104 W.Va. 617, 141 S.E. 7 (1927), stated: "If, on a trial for murder, the evidence is wholly circumstantial, but as to time, place, motive, means, and conduct it concurs in pointing to the accused as the perpetrator of the crime, he [or she] may properly be convicted." 104 W.Va. at 632–33, 141 S.E. at 13.

Upon all of the above, we reject the appellant's assertion of insufficiency of the evidence and, therefore, decline to disturb the verdict of the jury.

All other issues raised by the appellant have been considered by this Court and are deemed to be without merit. In

particular, the appellant asserts that the circuit court erred in (1) permitting the jury to draw unfair inferences from the evidence, i.e., that the appellant may have been responsible for a second homicide, the death of Timothy's father, and (2) allowing the State to reopen its case after the parties had rested, in order for the State to present impeachment evidence concerning the appellant's identification of the man known as "Starch, Starkey or Stretch." With regard to those errors, however, the appellant has not shown that he suffered prejudice before the jury. The record demonstrates that the inferences, if any, concerning the separate homicide were *de minimus*. Moreover, the circuit court permitted the appellant to take the stand to rebut the impeachment evidence.

Finally, the appellant, indicted for the robbery as well as the murder of Timothy Roberts, asserts error because the jury did not return a verdict of guilty or not guilty upon the robbery charge. However, upon the record in this case, double jeopardy principles would forbid the State from pursuing the robbery charge. *See W. Va. R. Crim.P.* 31(b). We decline to overturn the appellant's murder conviction upon such alleged error.

Accordingly, the appellant's conviction in the Circuit Court of Mineral County is hereby affirmed.

Affirmed.